WILLIAM H. WHITWELL *vs.* ISAIAH B. WINSLOW & another.

Bristol. Oct. 27, 1881. — March 4, 1882. MORTON, C. J., W. ALLEN & C. ALLEN, JJ., absent.

On the issue whether the gift of a promissory note was made, statements of the alleged donor, who died before the trial of an action on the note, at different times before and after the alleged gift and inconsistent therewith, are admissible to contradict the testimony of the donee, although not made in the donee's presence.

LORD, J. This action is brought by the plaintiff upon a promissory note, dated June 29, 1872, for the sum of five hundred dollars, made payable to Elijah Pierce or bearer, and which the plaintiff assumes to be a negotiable note. On this point no question is made.

The bill of exceptions and the arguments of the respective counsel but obscurely disclose the nature of the plaintiff's title to the note. It is certain that he paid no value for it; and so far as he has acquired any title to it, such title to it is by gift.

When was the gift made, if made? The bill of exceptions states only that it was a gift from Elijah Pierce to the plaintiff; and it seems to be assumed that, if made, it was made upon June 22, 1872, when Elijah Pierce was about eighty-five years old, and the assumption is that the gift was the result of an order of that date made by Elijah Pierce on the defendant Frederick Winslow, who had had in his hands a very considerable amount of money belonging to said Pierce; and the phrase from which the gift is deduced is in these words: "and the balance will be Henry's name as he shall see fit." In the same order by which the plaintiff is authorized to receive the money there are expressed certain obligations, or duties, or favors to be performed by him; for immediately succeeding the sentence quoted follows this phrase: "He will be authorized to pay all my bills and to take receipts for the same." Upon this order, the sum of $3890 was paid in cash to the plaintiff, as the balance held by the defendant to the credit of Pierce. As a part of the same transaction, the plaintiff, on June 25, gave to the defendant a receipt in these words: "$3890.00. Fall River, June 25th, 1872. Received of Frederick Winslow three thousand eight hundred and ninety dollars belonging to Elijah Pierce of Little Compton in compliance with his order. William H. Whitwell."

Still further, it appears from the bill of exceptions that prior to the giving of this order, upon which the balance was paid to the plaintiff, Elijah Pierce had actually contracted with Frederick Winslow in behalf of Isaiah Winslow to lend to him the sum of five hundred dollars out of this very balance of $3890; and the bill of exceptions finds that it was "pursuant to that arrangement" that Isaiah received the five hundred dollars and gave the note in suit. Up to the moment when the note was executed, there could have been no completed gift to the plaintiff of the money for which the note was given; for, up to that time, not only all the acts of the parties, but every writing in reference to the money in Frederick's hands, shows it to have been Pierce's money.

If Pierce had promised to the plaintiff that when Isaiah Winslow had borrowed the five hundred dollars and had given his note for it, he would give it to the plaintiff, that promise would be executory, and of no effect until the completion of it by delivery of the note, or by some act equivalent to such delivery.

We must of course assume that there was some evidence at the trial tending to show such delivery or its equivalent. No such evidence is referred to, and there is nothing tending to show the time when it took place.

The next undisputed fact which we know about the note is, that, some ten months later, the said Elijah was claiming it as his own, demanding the delivery of it to him by the plaintiff, and telling the plaintiff that he had stopped the payment of it to him. Although it is assumed by the plaintiff in his argument that either the note or the money was given to him in June 1872, there is nothing in the bill of exceptions which shows that, if given, it might not as well have been given after as before April 1873. If everything in relation to the gift appears in the bill of exceptions, we should think it certain that the jury would not have been warranted in finding a completed gift. But that question is not before us; and we are to assume that proper instructions were given as to what constitutes a gift, and the difference between a promissory or executory agreement to give and an absolutely completed gift, and upon all questions of that nature that the parties were satisfied with the instructions given by the court; and the only question reserved for our consideration is the admissibility of certain declarations made by Elijah Pierce.

Much embarrassment arises from the indefinite use of language in different parts of the bill of exceptions, which perhaps the parties understood to mean the same thing, but which in law must have quite different significations. For example, the opening paragraph of the bill of exceptions is in these words: " The plaintiff produced the note at the trial and claimed title in the same as a gift to him from Elijah Pierce, of Little Compton, R. I., since deceased in November 1877, aged about ninety years, and the person named in the note." This language not only implies that the gift to the plaintiff was of the contract then subsisting between the defendants and Pierce, but it

excludes every other idea. Subsequently, the bill of exceptions states that the plaintiff claimed title to the note on the ground that the money for which the note was given had been given to him by Pierce. If this were so, then the contract with Winslow was a direct and immediate personal contract between himself and Winslow, and the insertion of Pierce's name was merely fanciful, or colorable, and not indicative of any interest of Pierce in the contract or note; and of course the plaintiff could claim no title to it under Pierce by purchase, gift, or otherwise, because, if it were the plaintiff's own money which he lent, Pierce never had any right to the note whatever which he could convey.

Other embarrassments arise from the fact that neither the time when the declarations were made nor the declarations themselves are before us; and we must assume the ruling of the presiding judge to go to the extent that no act or word of Elijah Pierce, at any time or under any circumstances, could be competent evidence in favor of the defendant, unless such act or word were communicated to the plaintiff; with this qualification, that what "was said at or about the time of the alleged gift was admissible;" and with this further qualification, when evidence was offered of the acts and declarations of Pierce at the time of giving the orders of April 1873, that only those declarations were admissible which "were made at or about the time of the alleged gift and first order."

This language thus used by the court might convey the idea that the gift and order were identical; or, in other words, that the order in itself might be deemed a gift, and possibly very much of embarrassment may have arisen from submitting to the jury, as questions of fact, the questions whether Pierce intended by that order to give the balance to the plaintiff, and whether he did so give it.

These declarations thus offered are in some sense declarations in favor of the party making them, and so far as they tend to show the existence of recited facts, they are in the nature of hearsay evidence; and we find it somewhat difficult to reconcile the language of the tender of proof and the ruling of the court in relation thereto. The tender of proof was of declarations both before and after the alleged gift. The ruling admitted

declarations made at or about the time of the alleged gift. The order upon which the defendant paid the money to the plaintiff is dated June 22, 1872; the receipt of the plaintiff for the money paid upon that order is dated June 25, 1872; the note in suit, given for five hundred dollars of that balance, is dated June 29, 1872. Somewhere about that time, but it seems to us not until after June 29, was the gift made, if at all, and we think the language of the tender was sufficient to bring the evidence within the ruling of the court, and that therefore, upon the principles which the presiding judge laid down for the admission of evidence, he erred in not admitting the evidence tendered. He should at least have heard the evidence, ascertained the time when the declarations offered were made, and reported it to this court, so that this court might determine whether it was admissible under the rule which he had prescribed.

But we do not propose to rest the result upon that ground. Elijah Pierce was a man of extreme old age; he had, when about eighty-five years old, come into possession of a very considerable sum of money. Who his family were does not appear, except that it does appear that both these parties were relatives. It is evident that the views of different branches of the family were in conflict, and that the old gentleman sometimes desired one and sometimes another of these relatives to have charge and oversight of his estate. When he gave the order in 1872, the defendant Frederick had in his custody about six thousand dollars of Pierce's money. He then gave an order on Frederick to put about four thousand dollars of that into the plaintiff's hands. The next April, he directs the plaintiff to deliver up to Mr. Blaisdell all the property which he has in his hands belonging to him, except that on the same day he directs the plaintiff to give up the note in suit to George D. W. Pierce.

We think, taking all the facts into consideration, the situation of all the parties, and their relations to each other, that this case properly comes within the rule laid down in *Whitney* v. *Wheeler*, 116 Mass. 490; and that the evidence tendered should, upon the principles of that case, have been admitted.

*Exceptions sustained.*

*J. M. Morton*, for the defendants.
*H. K. Braley*, for the plaintiff.