ELIZABETH A. SCOTT *vs.* BERKSHIRE COUNTY SAVINGS BANK.
AMELIA J. SCOTT *vs.* SAME.

Hampshire.   Sept. 15. — Oct. 23, 1885.   FIELD, C. ALLEN, & GARDNER, JJ., absent.

To constitute a gift of a sum of money, deposited in a savings bank by one person in the name of another, without the latter's knowledge, the depositor retaining possession of the deposit-book, the money must be deposited with the intention of making a gift of it to the person in whose name it is put, and it must be accepted by him.

Upon the question of the intention of a person, who has deposited money in a savings bank in the name of another without the latter's knowledge, retaining the deposit-book himself, a letter from the treasurer of the bank to the depositor, who has also deposited money therein in his own name, notifying him that a certain sum was standing to his credit in the bank on which he was not entitled to interest because in excess of one thousand dollars, and, after the death of the depositor, his declarations relating to the deposit, are competent in an action by the person in whose name the deposit was made against the bank.

Upon the question of the intention of a person, who has deposited money in a savings bank in the name of A. without his knowledge, in holding the deposit-book, the taking of an order on the bank signed by A. for the payment of a certain sum to the depositor, and, after the latter's death, his declarations and letters respecting it, preceding and accompanying it, are competent in an action by A. against the bank.

In an action against a savings bank by a person in whose name a sum of money had been deposited, without his knowledge, by another, it appeared that an order on the bank for the payment of a certain sum to the depositor, to be signed by the plaintiff, came to him in a letter, which was not in the writing of the depositor, but was signed in his name by another person, whose agency was not shown; and that this order was signed by the plaintiff, and returned to the depositor. This letter was excluded. *Held*, that it should have been admitted.

In an action against a savings bank by a person in whose name a sum of money has been deposited in the bank by another, no exception lies to the exclusion of declarations of the depositor, in relation to making his will, after the gift of the money so deposited was completed.

TWO ACTIONS OF CONTRACT to recover certain deposits made in the defendant bank by Betsey Ford, the administrator of whose estate intervened as a claimant of the fund, under the Pub. Sts, c. 116, § 31. The cases were tried together in the Superior Court, before *Mason*, J., who allowed a bill of excep tions, in substance as follows :

It appeared in evidence that Betsey Ford lived in Peru, in this Commonwealth, until her death in June, 1882, at the age of over eighty years ; that she was an aunt of the plaintiffs, and lived in their father's family when the plaintiffs were smal' children and lived in Worthington, and that she visited then at Easthampton in 1877 ; that she deposited money in the defendant bank in her own name until the deposits amounted to over $1000; and, on March 29, 1872, she deposited in said bank $100 of her own money in the name of the plaintiff Elizabeth A. Scott, and took out a bank-book in said plaintiff's name. On September 6, 1873, she deposited in said bank $100, and on July 7, 1876, she deposited in said bank $70, in the name of said plaintiff. In October, 1874, she wrote to said plaintiff, and sent an order dated October 20, 1874, and addressed to the treasurer of the bank, for her to sign, which was signed by said plaintiff and returned to Betsey Ford, and was as follows : " Pay to the order of Betsey Ford all or a part of the moneys that have been and may be deposited, together with the interest that has and may become due on account of Book No. 11,576."

It also appeared in evidence, that, on May 14, 1875, she deposited in said bank $150, in the name of the plaintiff Amelia J. Scott, and took out a bank-book in said plaintiff's name. On September 7, 1875, she deposited $50 on said account, and on July 7, 1876, she deposited $394.78 on the same account. In

October, 1875, she wrote to said plaintiff, and sent an order for her to sign, which was signed and returned to her in a letter. Copies of these letters and of the order were annexed to the bill of exceptions. The order was similar to that set forth above. The letter from Betsey Ford contained the following: " This long time I have been wanting to write to you and send you an order for you to sign, since I have had the new bank-book. . . . . The bank-book is in the name of Amelia J. Scott, and I would like to have you sign and date the order so I can have it before long." The letter from the plaintiff contained the following: " I am greatly indebted to you for the confidence you have placed in me by putting my name on a bank-book of ·yours. I am sorry the letter was so long getting to me, for it must have given you some uneasiness. I fear you may have thought I was dishonest or negligent in returning your order."

It appeared that all the money deposited was the property ·of Betsey Ford at the time of the deposits; that previously to the requests for orders, as above described, the plaintiffs had no knowledge of said deposits, and never had the bank-books in their possession; and that Betsey Ford always retained the bank-books and said orders, and they were found tied up in a bundle with the bank-book in her own name, and in a trunk with her other papers. At the time of her death, the deposits amounted, with the accumulations of interest, to $1195.81. Nothing was ever drawn from said accounts. During all the time the deposits in the name of the plaintiffs were made, the deceased lived in the same house in Peru with a sister and the claimant, who had in his family several children; and the plaintiffs lived in Easthampton.

Elizabeth A. Scott testified that her aunt, Betsey Ford, visited at her father's house in Easthampton, where she lived with her other sisters and a brother, some time in September or October, 1877; that during said visit her aunt said to her that " the deposits were made for me, that she intended them for me, that she gave them to me, and that she heard her aunt say to her sister Amelia, that she made a deposit she intended her to have."

Amelia J. Scott testified, in regard to the visit of her aunt in 1877, as follows: " I had not seen her for a long time. She

said to me, 'I put some money in the bank for you.' I did not ask her how much, and she did not tell me. She said, 'I want you to have some money.' She did not say that I needed it, but she knew I did. She alluded at the same time to Lizzie's money, saying that she put some in on her book. I tried to find out which was the most. I did not ask her, but I tried to find out. At another time, during the same visit, we spoke about the orders. I said, 'Suppose you die, what is going to become of those orders?' and she said 'I intend to take care of them.' I said, 'Suppose you don't?' She said, 'If I should not, write to the bank immediately.' On hearing of her death, I did write immediately to the bank. When the order came for me to sign, I copied it into a blank-book so it could not be lost. It was not dated when it was sent to me, and therefore I did not date it."

This witness was recalled, and testified: " One time at this visit we talked about people's dying; we talked about wills, about father's making a will. She said she did not like to make a will; it might be destroyed if she should die. I said, 'Why can't the orders be destroyed?' and she said, 'They can. I mean they shall be put out of the way before I breathe my last.' "

Dwight Frissell testified: " At some time after Betsey Ford visited at Easthampton, I met her on the road in Peru, and after she spoke about the family, and that they had been to a good deal of expense, I said to her, You are able to help them some, and Betsey said—I don't know whether she said she had helped them, or was going to assist them some, on account of an invalid sister of the plaintiffs. Then I spoke and said, What is going to become of your money? have you made a will? She said she had not made a will, but she said, 'I have given two of the girls bank-books.' I lived in the same family with the plaintiffs when they were small children. Betsey Ford used to be there, and the relations between her and these children were tender."

L. Maria Scott testified: " The first I knew of these bank-books was when Betsey Ford visited me at Peru, in 1876. She gave them into my hands to compute the interest. She told me she made these deposits then for them; she said that perhaps I would think it strange she had not given me any book as well as them, and she told me why she had not. The next year after

this she visited us at Easthampton. I heard her conversation with my sisters about the books. I cannot recollect just what she said; she spoke of them as being theirs. I visited her at Peru in 1878. I went with her to see about the interest on the books; she said at that time the same as to say the books were for them. I saw her in 1879 in Peru; she talked of the books again, and asked me to compute the interest. I was surprised to find my sister Lizzie's not so much as Jane's. I said, I supposed Lizzie's was the largest. She said, 'You did? it is just the same as it has been; you appear to be displeased about it.' I said, No, I was disappointed, for I had supposed that was the largest. She said, 'Ar'n't you willing I should give the most to Jennie, rather than Lizzie?' I told her I did not care, only that I supposed it was the other way. I borrowed $200 of her, and gave a note. We spoke about these orders the last time I visited her (1879), and I said to her, If you should die suddenly, what will become of my note, suppose you die first? She had told me previously she was going to put this and the orders out of the way, so they could not trouble them. I said, Suppose you die suddenly, what will become of them? She said, 'If I can reach them, I shall destroy them.' I said, Suppose you are not able to reach them? She said she did not know. I asked if Aunt Phœbe would not take them, and she said, 'You ask her when she comes in.' When she came in, I asked her, and she did not answer me. I asked her again, Will you take care of these orders, suppose Aunt Betsey dies before she destroys them? She did not answer, and Aunt Betsey said, 'Can't you tell whether you will or not?' and she said, 'I will.' I said, Then I am satisfied. She told me why she had the orders; she said, 'I don't know what may happen to me in this life. I may need all I have.'"

The claimant, for the purpose of showing by her declarations the intention of Betsey Ford in depositing said money in the book taken out in the name of Elizabeth A. Scott, and that it was to avoid the provision that deposits of over $1000 could not draw interest, offered to show that she received the following letter, dated in September, 1871, and signed by the treasurer of the bank: "In compliance with the acts of the Legislature of Massachusetts of 1871, chap. 262, sec. 1, you are hereby notified

that for six months now next preceding the sum of $80.74 has been standing to your credit in this institution, on which you have not been entitled to interest because the same exceeds the sum of one thousand dollars." That, soon after the receipt of said letter, she had a conversation with the claimant with reference to making said deposit; and that it was not her intention to give said money to Elizabeth A. Scott. This evidence was objected to by the plaintiffs, and excluded. It did not appear that the plaintiffs had any knowledge either of the letter or the conversation. The claimant also offered to prove a conversation between himself and Betsey Ford, a short time before the date of Elizabeth A. Scott's order, with reference to the title to said money deposited in Elizabeth A. Scott's name, and the disposition of said money in case of her death, if she did not obtain an assignment of the same from Elizabeth A. Scott, for the purpose of showing, by the declarations of Betsey Ford, that it was her intention to retain said money as her own, and not to have the same go to said plaintiff. This evidence was objected to by the plaintiffs, and excluded. This conversation was not known to either of the plaintiffs.

It also appeared from the testimony of Elizabeth A. Scott, on cross-examination, that the order came to her in a letter which was in court, and upon the call of the claimant was produced by the plaintiff for the purpose of letting the claimant have it to offer in evidence, if competent. Said letter was not in the writing of Betsey Ford, and was not and did not purport to be signed by her, but in her name by another person, and no agency was shown. The claimant did not produce the reply of Elizabeth A. to said letter, or account for its absence. It was objected to by the plaintiff, and excluded.

The claimant also offered to show that, in 1881, Betsey Ford went to a justice of the peace in the neighborhood where she lived, (not a lawyer, but accustomed to make wills and other writings for persons in the vicinity,) and consulted him with reference to making a will of her property, including said money deposited in the name of the plaintiffs; that she explained how she came to make the deposits as she did, and about having the orders from each of the plaintiffs, and stated to him that it was not her intention to give the plaintiffs said deposits, and what

disposition she wished to make of her estate. This evidence was objected to by the plaintiffs, and excluded. This conversation never came to the knowledge of the plaintiffs, and no will was made.

A copy of the by-laws of said bank was printed in said pass-book, in one of which it was provided that "no person can receive either principal or interest, without producing the original book, that each payment may be entered therein, unless it be proved to the satisfaction of the trustees or treasurer that such books shall have been lost or destroyed, in which case a legal discharge shall be given."

The claimant asked the judge to rule as follows: "1. Upon the evidence in this case, the plaintiffs are not entitled to recover. 2. The declaration and acts of Betsey Ford, testified to, are not sufficient to establish the trust declared on, and are not sufficient to enable the plaintiffs to recover. 3. To enable the plaintiffs to recover, they must show that, at the time of the delivery of each of the orders to her by the plaintiffs, Betsey Ford agreed to hold the property in trust. 4. If Betsey Ford intended to have the funds in the bank become the property of the plaintiffs by the destruction of these orders, and that was not done, then the plaintiffs cannot recover."

The judge declined to give the rulings requested, but ruled as follows:

"The deposit by Betsey Ford of her own money in the names of the several plaintiffs, retaining in her own possession the deposit-books, did not vest the title of the deposits so made in the plaintiffs. If nothing further was done by the deceased during her lifetime to give them title, the title remained in the deceased at her death, and now vests in her administrator.

"If Betsey Ford made the deposits intending thereby to vest the title in the plaintiffs, but retained the deposit-books in her own possession, her gift was not completed, and the title did not pass to them until some other act was done by her.

"If Betsey Ford made the deposits intending thereby that the plaintiffs should have the property in said deposits, subject to her right to draw therefrom for her own needs during her life, and retained the bank-books in her own possession, there was no trust created in favor of the plaintiffs until some other act

was done by her, and if no other act was done by her, the title remained absolute in her and continues absolute in her administrator.

"If Betsey Ford made the deposits intending thereby to vest the title to the deposits in the plaintiffs severally, subject to a right in herself to draw from it for her necessities during her life, and thereafter, for the purpose of making the right to draw for herself effective and convenient, took the orders which have been put in evidence; and if at any time after said deposits were made, whether at the time said orders were taken or at any subsequent time, she communicated what she had done, and her intention in doing it, to the plaintiffs, a trust was created and completely established in favor of the plaintiffs, and on the decease of Betsey Ford, not having drawn from the deposits, they became the absolute property of the plaintiffs. If this is true as to one of the deposits, and not true as to the other, it is to be applied to the one as to which it is proved, and not to the other.

"No particular form of words is necessary to make the declaration of trust to the plaintiffs effective, but you must be satisfied that it was a declaration of an existing trust, and not merely the declaration of a future intention to create a trust. A declaration to other parties than the plaintiffs would not be sufficient. The burden is on the plaintiffs to show that there was the declaration of an existing trust.

"I am asked to instruct you, that, if Betsey Ford intended to have the funds in the bank become the property of the plaintiffs by the destruction of the orders, and this was not done, then the plaintiffs cannot recover. That would be true; but it would also be true, that, if she had intended to vest the property in the plaintiffs, and had taken the orders only for the purpose of making her own reserved right effective and convenient, and had intended to destroy the orders for the purpose of removing any complication on account of the appearance of the orders, and had failed to destroy them, then it would have no effect whatever, because the destruction was unnecessary."

The jury returned a verdict for the plaintiff in each case; and the claimant alleged exceptions.

*D. W. Bond*, for the claimant.

*W. G. Bassett*, for the plaintiffs.

W. ALLEN, J.  Mrs. Ford, the claimant's intestate, deposited her money in a savings bank in the names of the plaintiffs, and the claimant is entitled to it unless his intestate made a gift to each of the plaintiffs of the money deposited in her name. *Broderick* v. *Waltham Savings Bank*, 109 Mass. 149.  *McCluskey* v. *Provident Institution for Savings*, 103 Mass. 300.  To constitute a gift to the plaintiff, the deposit must have been put in her name with the intention of making a gift of it to her, and it must have been accepted by her.  The difference between this case and *Sweeney* v. *Boston Five Cents Savings Bank*, 116 Mass. 384, is, that in that case the donee was present when the deposit was made, and the donor delivered the deposit-book to her. The delivery and acceptance of the book were conclusive evidence, both of the intention of the donor to make the gift, and of the acceptance of it by the donee.

In the case at bar, the deposit was made without the knowledge of the donee, and the deposit-book was retained by the donor.  The intention of the donor to make a gift is open to inquiry ; and the acceptance of it by the donee completes a contract between her and the bank, and cannot be presumed, but must be shown.  If the evidence shows that the donor intended that the deposit should belong to the donee, and received and held the book for her until acceptance by her, it shows a completed gift, even though it might have been revoked before acceptance.

Upon the question of the intention of Mrs. Ford in making the deposits, the letter of the bank to her, and her declarations relating to it, are competent.  The length of time between the declarations and the deposits affects the weight, but not the competency, of the evidence.

Upon the question of Mrs. Ford's intention in holding the book before the gift was perfected, — whether she held it as owner, or as the agent or depositary for the plaintiff, — her declarations and acts while holding it, showing the character of the act, are competent.  The acts of taking the orders from the plaintiffs for payment to herself were acts the significance of which depended upon her intent in them, — whether exercising dominion over the deposit as owner, or recognizing the dominion of the plaintiff; and her declarations and letters respecting such acts,

preceding and accompanying them, are competent. The letter to the plaintiff Elizabeth A. was sufficiently identified as coming from Mrs. Ford by containing the order and being acted on as hers by the plaintiff, and sufficiently appeared to relate to the order, and should have been admitted. Each plaintiff relied upon a particular occurrence as proving the completion of the gift to her. The declarations of the donor, in relation to making her will, were after the gift was completed, if it ever was completed, and were either incompetent or immaterial, and were properly excluded. See *Whitney* v. *Wheeler*, 116 Mass. 490; *Whitwell* v. *Winslow*, 132 Mass. 307.

If the donor made the deposit and kept the book for the plaintiff, intending it as a gift to her, the gift would not be perfected until accepted by the donee; and acceptance implies a mutual act of the parties, or an act by one assented to by the other, equivalent to an acceptance of a chattel upon delivery. An act would perfect the gift of the legal interest which, had the deposit been in the donor's name in trust, would have been sufficient to perfect the gift of the equitable interest, as in *Gerrish* v. *New Bedford Institution for Savings*, 128 Mass. 159. An acceptance and a completed gift might be inferred from the fact that the donor informed the donee of the gift, with the express or implied assent of the donee. Any act or speech between the parties, which should show a mutual understanding that the gift was made, would be sufficient evidence. The instructions to the jury were substantially correct, though not verbally accurate; but there was error in the exclusion of evidence.

*Exceptions sustained.*