KENNEBEC SAVINGS BANK, in equity,

*vs.*

JOHN B. FOGG, executor, AND EMERY O. BEANE, administrator, claimants.

AUGUSTA SAVINGS BANK, in equity,

*vs.*

SAME, claimants.

Kennebec.      Opinion April 10, 1891.

*Savings Bank. Deposit. Husband and Wife. Evidence.*

The entries upon the books of a savings bank, and upon the pass-books issued by such bank to a depositor, are not conclusive evidence of the ownership of a deposit in the bank.

Where the question of ownership is between the estates of deceased husband and wife, and the books show deposits in the name of the wife, evidence of the following circumstances is admissible :—The husband's ability and the wife's inability to earn and accumulate ; the depositing and withdrawing of sums in and from the accounts by the husband ; the transfer of sums between the accounts in question, and other accounts of the husband ; that the husband in fact opened the account ; that he had prior accounts which had run up to two thousand dollars, the legal limit for a single depositor ; that after the wife's death the husband continued the account as his own ; that no administration was taken out on the wife's estate for four years ; that before her death she had given her husband an order for the whole sum ; that she had never had any other account ; that the wife had never personally deposited or withdrawn a single sum ; that she was unknown to the officers of the bank ; that the pass-book was usually in the husband's possession or else in their joint possession.

In this case the evidence is considered by the court to establish the ownership of the husband.

ON REPORT.

These were two bills of interpleader, heard together on bills, answers and proofs ; the court below having ordered the defendants to interplead.

The case is stated in the opinion.

*Heath and Tuell*, for John B. Fogg.

Not a gift, *inter vivos*, to wife. *Carleton* v. *Lovejoy*, 54

Maine, 446 ; *Robinson* v. *Ring*, 72 *Id.* 140 ; *Drew* v. *Haggerty*, 81 *Id.* 231 ; *Parcher* v. *Sav. Inst.* 78 *Id.* 473 ; *Taylor* v. *Henry*, 48 Md. 550, (S. C. 30 Am. Rep. 486) ; *Towle* v. *Wood*, 60 N. H. 434 ; *Pope* v. *Burlington Sav. Bank*, 56 Vt. 284, (S. C. 48 Am. Rep. 781). Not a declaration of trust, for want of notice to *cestui que trust*. *Smith* v. *Sav. Bank*, 64 N. H. 231 ; *Marcy* v. *Amazeen*, 61 N. H. 131 ; *Jewett* v. *Shattuck*, 124 Mass. 590 ; *Clark* v. *Clark*, 108 Mass. 522 ; *Scott* v. *Bank*, 140 Mass. 157. Attempted gifts testamentary and void. *Sherman* v. *Bank*, 138 Mass. 581 ; *Nutt* v. *Morse*, 142 Mass. 1 ; *Basket* v. *Hassell*, 107 U. S. 602 ; 108 U. S. 267 ; *McCord* v. *McCord*, 77 Mo. 166 (S. C. 46 Am. Rep. 9) ; *Pope* v. *Bank, supra.* Books No's 2640 and 1573 : *Robinson* v. *Ring*, 72 Maine, 140 ; *Northrop* v. *Hale*, 73 *Id.* 66 ; *Stone* v. *Bishop*, 4 Cliff. 593. Orders of May 22, 1882 : *Exchange Bank* v. *McLoon*, 73 Maine, 499 ; *Robbins* v. *Bacon*, 3 *Id.* 346 ; *Wing* v. *Merchant*, 57 *Id.* 383. No consideration necessary to support them. *Johnson* v. *Thayer*, 17 Maine, 403 ; *Kimball* v. *Leland*, 110 Mass. 325 ; *Putnam* v. *Story*, 132 Mass. 205 ; *Ensign* v. *Kellogg*, 4 Pick. 1 ; *Robertson* v. *Gardner*, 11 Pick. 146 ; *Clark* v. *Downing*, 1 E. D. Smith, 406 ; *Mills* v. *Fox*, 4 *Id.* 223 ; *Beach* v. *Raymond*, 2 *Id.* 496 ; *Arthur* v. *Brooks*, 14 Barb. 535 ; *Richardson* v. *Mead*, 27 Barb. 178 ; *Carpenter* v. *Soule*, 88 N. Y. 251 ; *Ellis* v. *Secor*, 31 Mich. 185, (S. C. 18 Am. Rep. 178) ; *Briscoe* v. *Eckley*, 35 Mich. 112 ; *Fortescue* v. *Barnett*, 3 M. & K. 36 ; *Bennett* v. *Cooper*, 9 Beav. 252 ; *Blakeley* v. *Brady*, Dr. & Wal. 311 ; *Gannoy* v. *White*, 2 Ir. Eq. 207 ; *Collinson* v. *Pattrick*, 2 Keen, 134 ; *Penfold* v. *Mould*, L. R. 4 Eq. 562 ; *White* v. *Kilgore*, 77 Maine, 571 ; *Grymes* v. *Horne*, 49 N. Y. 17, (S. C. 10 Am. Rep. 17). Notice to bank, after assignor's death, not necessary. *Wood* v. *Partridge*, 11 Mass. 491 ; *Dix* v. *Cobb*, 4 Mass. 512 ; *Wakefield* v. *Martin*, 3 Mass. 558 ; *Porter* v. *Bullard*, 26 Maine, 448 ; *Thayer* v. *Daniels*, 113 Mass. 129. Counsel also cited : *Fogg* v. *Dearborn*, 82 Maine, 538 ; *Hatch* v. *Atkinson*, 56 Maine, 324 ; *Cooper* v. *Burr*, 45 Barb. 9 ; *Noble* v. *Smith*, 2 Johns. 52 (S. C. 3 Am. Dec. 399) ; *Blake* v. *Jones*, 1 Bailey Eq. (S. Ca.) 141, (S.C. 21 Am. Dec.

530); *Jones* v. *Selby*, Prec. Chan. (Finch's Prec.) 300; *Stephenson* v. *King*, 81 Ky. 425 (S. C. Am. Rep. 172); *Marsh* v. *Fuller*, 18 N. H. 360; *Coleman* v. *Parker*, 114 Mass. 30; *Phipard* v. *Phipard*, 29 N. Y. 294; *Parnie* v. *Capewell*, 45 Pa. St. 89; *Lane* v. *Lane*, 76 Maine, 521.

*Beane and Beane*, for Emery O. Beane.

Title to the money and banks' liability rest upon depositor's books and entries of the banks. Orders of May 22, 1882, made the husband the wife's agent only. Her death was a revocation. Both on equal footing as to property at the outset. Business at banks mostly done by the husband even when wife owns the deposit. Money presumed to be the person's in whose name is the deposit. *Drew* v. *Haggerty*, 81 Maine, 231. Bank books controlled in *Northrop* v. *Hale*, 73 Maine, 66. Counsel also cited: *Barker* v. *Frye*, 75 Maine, p. 33; *Sullivan* v. *Lewiston Inst. Sav.* 56 Maine, p. 507; *Parcher* v. *S. & B. Sav. Inst.* 78 Maine, 470; *Sweeney* v. *Boston, &c. Bank*, 116 Mass. 384. Limit of $2000, applies to wife as well as husband. No gift to husband by wife, intention and delivery wanting. *Dresser* v. *Dresser*, 48 Maine, 67; *Bank* v. *Dearborn*, 82 Maine, 538, and cases cited in briefs; *Lane* v. *Lane*, 76 Maine, 521; *Trowbridge* v. *Holden*, 58 Maine, 117.

EMERY, J. The Kennebec Savings Bank, and the Augusta Savings Bank, each filed a bill in equity to have John B. Fogg, Executor of the will of Amos C. Hodgkins, deceased, and Emery O. Beane, Administrator of the estate of Mary J. Hodgkins, deceased, interplead as to the ownership of certain sums of money on deposit in each bank. By agreement of all parties, the cases are reported to the law court, to be there heard and determined as a case between the two estates.

In determining the ownership of these deposits, the first inquiry naturally is,—what is shown by the books of the banks and by the pass-books they issued? The Kennebec Savings Bank has one deposit only. The signature or deposit-book in the bank has this entry: "November 8, 1870, Mary J. Hodgkins. Birth place Mt. Vernon; residence, Readfield. $100,

No. 270." The depositor's pass-book has this heading : "Kennebec Savings Bank in account with Mary J. Hodgkins. No. 270." In the Augusta Savings Bank are three deposits. The signature or deposit-books, contain the following entries : "No. 2640, Mary J. Hodgkins, Vienna, March 17, 1864." "No. 15753, Mrs. Amos C. Hodgkins ; Winthrop, January 1, 1878." "No. 13149. Amos C. Hodgkins, October 15, 1875, $91.69, Transferred August 1st."

The depositor's pass-books had these headings : "No. 2640, Augusta Savings Bank in account with Mary J. Hodgkins." "No. 15753, Augusta Savings Bank in account with Mrs. Amos C. Hodgkins." "No. 13149, Augusta Savings Bank in account with Amos C. Hodgkins. Payable to Mary J. Hodgkins."

From the books alone, it would appear very clearly that all these deposits belonged to the estate of Mary J. Hodgkins, (Mrs. Amos C. Hodgkins being the same person,) except perhaps the last-named deposit, No. 13149, in the Augusta Savings Bank. It was held, however, in *Northrop* v. *Hale*, 72 Maine, 275, that, in cases of this kind, evidence *aliunde* was admissible to vary the effect of the entries in the bank and depositor's pass-books. Both parties have accordingly introduced much extraneous evidence.

By a comparison and study of the material and relevant parts of the evidence we are reasonably satisfied of the following facts : Amos C. Hodgkins and Mary J. Hodgkins were husband and wife, having lived together, housekeeping for many years in one or more towns in Kennebec County. They had no children. Mary died February, 1883, and Amos died July 30, 1887, both at an advanced age. He was an industrious, economical man, and was reputed to have saved considerable money. She had no separate property at the time of her marriage, and had no chance to accumulate any except from sale of eggs, &c., from knitting and other kindred sources open to a housewife. He had made deposits in both banks prior to those now in question. He made deposits also in the name of other parties, before and during the time of these deposits in question. Some of these prior deposits had run up to the legal limit of $2000 for one

depositor. A large part of these deposits now in question were made up of transfers from deposits in his name. The deposits now in question in the Augusta Savings Bank were made by him, and he appeared to manage them, by making deposits of new sums, and occasionally withdrawing sums, and by transferring sums between these accounts and other accounts. The signatures in the signature-book of the Augusta Savings Bank were made by him. There is much less evidence of his control of the deposit in the Kennebec Savings Bank, and indeed the treasurer of that bank, thinks the signature is in Mary's own hand writing. There is no evidence that any other deposits were in her name at any time.

The various pass-books according to some witnesses were seen occasionally in a tin box, kept in a trunk in the sleeping room of the husband and wife. The keys of this trunk and box were kept by Amos, except that when leaving home he left the keys with his wife. We do not find any evidence that she ever mentioned that she had any money in either or any bank, nor that she ever alluded to, or was seen to have, or make any use of the pass-books. None of the officers of the banks have any recollection of her, except that the venerable treasurer of the Augusta Savings Bank thinks she may have been in the bank a few times with her husband, but not to do any business. Although she died four years and more before her husband, and although her heirs, or many of them, lived in her neighborhood, they made no move for an administration upon any estate of hers until after her husband's death, and the banks' hesitation about these deposits. No one seems to have supposed that she left any estate to be administrated.

In May, 1882, some nine months before her death, at her husband's request she signed and delivered to him three written orders covering three of the deposit accounts, No. 270, in the Kennebec Savings Bank, and Nos. 2640 and 15753, in the Augusta Savings Bank. These three orders were of the following tenor, *mutatis mutandis.*

"Winthrop, May 22, 1882.
"To the Treasurer of the Kennebec Savings Bank.

"Pay to Amos C. Hodgkins the full amount of deposits and interest on my account when called for."

"No. 270.                                    Mary J. Hodgkins."

"Witness to signature, Eliza D. Paul."

There was no order covering deposit No. 13149.

The various pass-books were in the possession of Amos after the death of Mary, and he made deposits and withdrawals on all the accounts after her death and nearly up to his own, as if they were his own accounts.

It remains to draw the proper inferences from the foregoing, and to determine to which estate each deposit belongs. No. 13149, in the Augusta Savings Bank, was deposited by Amos C. Hodgkins, in his own name. It was undoubtedly his money at the time. The words "Payable to Mary J. Hodgkins," on the books, do not import a completed gift, vesting title in her. At the most they only import an intention to give. It does not appear that this deposit pass-book was ever given to her, or that she ever knew of the deposit. The evidence falls short of showing a completed gift. *Robinson* v. *Ring*, 72 Maine, 140 ; *Northrop* v. *Hale*, 73 Maine, 66, 71 ; *Sherman* v. *Savings Bank*, 138 Mass. 581.

The other three deposits may be considered together. The fact that his prior deposits in his own name were overrunning the legal limit of $2000 to one depositor, goes far to show a reason for making these deposits in different names. *Brabrook* v. *Savings Bank*, 104 Mass. 228 ; *Parkman* v. *Savings Bank*, 151 Mass. 218. The fact that the deposits in the Augusta Savings Bank were largely made up by transfers from other accounts of his tends strongly to show that they were his own. The three written orders covering these three accounts, under all the circumstances, lead us to believe that those accounts were in her name only for his convenience, and that the money was really his. Similar orders under similar circumstances in *Scott* v. *Savings Bank*, 140 Mass. 157, were held to be weighty evidence of an original ownership of the funds by the recipient of the orders. We can find no other satisfactory reason for her giving them in this case. They just fit the three accounts in

her name. There is no order for account No. 13149, which was in his name payable to her. It was held in *Kimball* v. *Leland,* 110 Mass. 325, and in *Foss* v. *Savings Bank,* 111 Mass. 285, that such an order, the pass-book being delivered to the donee, was more than a power of attorney, and was an assignment of the fund, and valid after the death of the donor or assignor. It is not necessary to decide whether in this case the written orders effected an assignment, as we here only take them into account as circumstances of great force tending to prove that the money originally belonged to Amos.

Without going further into details, we readily infer and believe from all the circumstances, that all the money in the four accounts came from, and belongs to the estate of Amos C. Hodgkins.

Amos C. Hodgkins, however, by his peculiar manner of doing this business, has occasioned this litigation, and we think his estate should pay all the taxable costs of all parties, and reasonable counsel fees for the counsel of each estate; and also the usual probate fees for taking out administration upon the estate of Mary J. Hodgkins, up to the date of filing these bills. The details can be settled by a single justice.

*Decrees according to the foregoing
opinion.*

PETERS, C. J., VIRGIN, LIBBEY, HASKELL and WHITEHOUSE, JJ., concurred.