## HALLOWELL SAVINGS INSTITUTION

### vs.

LENDALL TITCOMB, Exr., and MARTIN T. V. BOWMAN, Claimant.

Kennebec.    Opinion December 19, 1901.

*Gift.   Savings Bank Deposit.   Delivery.   Trust.*

A gift inter vivos is not valid, unless there is a delivery to the donee, or to some one for him; unless the donor parts absolutely with all present and future dominion and right of control over it; and unless the gift is intended to take immediate effect, to be complete as a transfer of title, in presenti, and is absolute and irrevocable.

Where a depositor in a savings bank caused the deposit to be transferred on the books of the bank to his brother and surrendered his old deposit book and took out a new one in the name of his brother, it was the same as if he had drawn the money and then deposited it in his brother's name, and that is the same as if he had then so deposited it for the first time.

A delivery of money to the treasurer of a savings bank, as a deposit, for a donee may be regarded as a sufficient delivery to the donee.

But where, in such case, the depositor retained the new deposit book and in writing to his brother, about what he had done, declared that he wanted the interest as long as he lived, "to live on" and used the expression "If I should be taken away, it is yours," and proposed to give his brother a writing, "so that you (the brother) will have something to show," "now, you will have it to show when I am gone" and declared that he wanted to "secure this fifteen hundred to you (the brother) in case of my death," the court is of opinion that the depositor did not intend to make an absolute gift, in presenti.

A depositor after making the transfer declared to his brother, that the money, after the brother's death, must be divided equally among the brother's children, that he had transferred the money with that "understanding," and that he wanted the interest to live on during his own life, and this arrangement was agreed to by the brother.

*Held;* that the depositor's purpose was for his brother to hold the money in trust for the benefit of the depositor himself during his lifetime and later for the benefit of the brother's children and that the trust is valid.

The creation of a trust is but the gift of the equitable interest.   An unequivocal declaration as effectually passes the equitable title to the cestui que trust, as delivery passes the legal title to the donee of a gift inter vivos.

In order to create a trust, it is not essential that all the steps be taken at one time. The declaration may follow the deposit. The declaration may at first be conditional or provisional, or tentative. If ultimately the conditions are eliminated, and the provisions are settled, so that the declaration becomes unequivocal, it is sufficient.

ON REPORT.

Bill of interpleader to determine the ownership of a savings bank deposit. The facts were agreed and are stated in the opinion.

*F. E. and E. O. Beane,* for plaintiff.

*S. L. Titcomb,* for executor.

*H. M. Heath and C. L. Andrews,* for claimant.

SITTING: WISWELL, C. J., WHITEHOUSE, STROUT, SAVAGE, POWERS, JJ.

SAVAGE, J. Bill of interpleader to determine ownership of deposit in the plaintiff bank. It is claimed by Lendall Titcomb, Esq., as executor of the last will of Joseph J. Bowman, and by Martin T. V. Bowman, a brother of Joseph. It is not in dispute that the deposit was originally made by Joseph, and in his own name. That being so, it should now come into the hands of his executor for administratation, unless in some way Joseph J. Bowman was devested of his title in his lifetime. Martin T. V. Bowman sets up a gift inter vivos, subject to a parol trust, for the benefit of his children, from Joseph to himself; or if the gift be not sustained, a trust created by Joseph for the benefit of Martin's children. The executor replies that the gift was invalid for want of delivery. The executor also claims that the donor did not intend to part with his dominion and control of the deposit, and that no gift was made with intent to take effect in presenti, but only, at the most, in futuro, as a testamentary disposition; and that if the gift was imperfect, as claimed, a trust cannot now be predicated from a transaction intended as a gift. And here we find the only issues presented for our consideration.

No principle of law is more firmly established than that a gift inter vivos is not valid, unless there is a delivery to the donee, or to some one for him; unless the donor parts absolutely with all present and future dominion and right of control over it, and unless the gift

is intended to take immediate effect, to be complete, as a transfer of title, in presenti, and is absolute and irrevocable. *Allen* v. *Poler-eczky*, 31 Maine, 338; *Dole* v. *Lincoln*, 31 Maine, 422; *Donnell* v. *Wylie*, 85 Maine, 143; *Bourne* v. *Stevenson*, 58 Maine, 499; *Hill* v. *Stevenson*, 63 Maine, 364, 18 Am. Rep. 231; *Robinson* v. *Ring*, 72 Maine, 140, 39 Am. Rep. 308; *Augusta Savings Bank* v. *Fogg*, 82 Maine, 538.

This case shows the following essential facts. In 1899, Joseph J. Bowman deposited $1500 in his own name in the Hallowell Savings Institution. A short time before February 20, 1900, he asked the treasurer of the bank if he could transfer the account "to his brother M. T. V. Bowman, as he wished his brother's children to have it when he was gone." He was told that it could be done, and the book sent to his brother with his instructions. On February 20, 1900, he presented his deposit book at the bank and requested that it should be transferred to his brother M. T. V. Bowman, which was accordingly done. The account with Joseph J. Bowman on the books of the bank was balanced, and a new account opened with M. T. V. Bowman. The old deposit book was surrendered, and a new book was issued in the name of M. T. V. Bowman, but delivered to Joseph J. Bowman.

Nearly two years before this, Joseph had written to his brother Martin, saying among other things,—"Don't you think you could come on some time before a great while as I would like for you to know in case I am taken away what will come to you." In quoting from this letter, as we shall do in quoting from others, we do not undertake to give literally the writer's illiterate, ungrammatical and sometimes confused sentences. We give them as we interpret them. March 29, 1900, five or six weeks after the transfer of the deposit on the books of the bank, Joseph wrote to his brother again, saying, "I have transferred to you fifteen hundred dollars, or taken out a savings bank book in your name. If I should be taken away, it is yours with the understanding that your wife shall have no part of the sum. In case of your death, it must be divided equally among your children. The law is such in this state that I want to have this fixed while I am living. My folks are gone to-day. I could

find no pen to write with. I will write with ink giving you this so you will have something to show, but if anything happens that I should need it, I know I can trust you. I have a right to do this. I get three and a half per cent here. I want the interest while I live to live on. I don't know but you had better draw the money. I don't know what you could do with it there. Write and tell me what you think. I shall send a writing making this gift now you will have it to show when I am gone."

On April 5, 1900, M. T. V. Bowman replied: "Now in regard to this gift that you mention. The best way I know of if you wish to do this, is to send me a New York draft for the amount and I will pay you four per cent interest on it as long as you live. You say you are getting $3\frac{1}{2}$ per cent now. . . . . Now I would pay you 4 per cent interest as long as you live, and send you the interest semi-annually. . . . . As you desire it should go to my children, that is all right. . . . . If you should prefer that I should draw from here for the money instead of your sending draft, why instruct me fully what bank to draw on. . . . . Please let me hear from you on receipt of this so I will know what arrangements to make and what to do in regard to your proposition on the money question."

About this time, probably after the receipt of this letter, Joseph went to the bank and tried to draw the money, saying that he wished to send it to his brother. The banker refused to pay without the order of Martin, and gave Joseph a blank order to be filled out by Martin for the money. April 28, 1900, Joseph enclosed this blank order to Martin, in a letter in which he said:— "Now I want you to sign the receipt (order) in this letter, and send it back to me as I put the money in the bank in your name, and cannot withdraw it without your order. There is a Trust Company in Augusta that pays four per cent. I never put any money there. I want to secure this fifteen hundred to you. In case of my death life is uncertain with you and me both is why I want it divided equally among your children, in case of your death. Now send me the interest. I will get the money as soon as I can without losing interest. . . .

I have the money in Oakland bank. As soon as I can go there,

I will send you a check. . . . Now send the order. If I can do no better, I can draw it here."

To this letter Martin replied, on May 8 following. He enclosed the order signed by himself, and said :—"I have signed the order on the Treasurer of the Hallowell Savings Institution, amount in blank. . . . I think the better way would be for you to send draft on New York for the amount when you draw it. I think that would be the safest way. However, fix it just as you think best.

When it comes I will put it right out at interest and send you the interest promptly every six months. . . . Whatever disposition you shall make and send here shall go directly to them (his children) share and share alike at my death, after you have the profits and interest of it while you live. This, I believe, is just according to your wish and what you stated."

Joseph J. Bowman died May 18 following, never having presented the order of his brother to the bank, or drawn the money. The deposit book which he took out in the name of his brother February 20, 1900, when he transferred the account, remained in his possession until his death.

The first objection raised by the executor to the validity of the alleged gift,—that of want of delivery,—does not appear to us to be troublesome. If the transaction of February 20 was intended to vest title to the deposit immediately and absolutely in Martin, without any further present or future dominion and control of the donor over it, then the case seems to fall within the rule, as to delivery, established in *Barker* v. *Frye*, 75 Maine, 29. In that case the donor had made a deposit in bank in the name of the donee, "subject to the order of Lydia P. Frye, during her lifetime." It was held that this constituted a trust, under the circumstances of that case. Subsequently she informed the treasurer of the bank that she wished to give the donee full control over the deposit, and the absolute ownership of it. And to accomplish this purpose, the treasurer, at her request, erased from the books the original entry "subject to the order of Lydia P. Frye."

It being claimed that that constituted a gift to the donee, the same objection was made in that case that is made in this, namely, want of

delivery.    But the court said:    "Here the evidence of title was given
to the treasurer.    .    .    .    .    But this is not all.    The deposit was
the subject of the gift.    The act and declarations of Mrs.  Frye with
the change in the books were equivalent to a withdrawing and re-
depositing the money for the donee.    If this had been done the de-
livery could hardly have been questioned.    But the ceremony would
have been a useless one, and would have added no force to the evi-
dence of a change of property."    It is important to bear in mind
that in this case, as in *Barker* v. *Frye*, it was the deposit itself which
was transferred by the acts which it is claimed constituted the gift.
Frequently the transfer is made by a delivery of the bank-book, the
evidence of the deposit, and that is held to be a sufficient delivery,
even though it has not been assigned.    *Hill* v. *Stevenson*, 63 Maine,
364, 18 Am. Rep. 231.    But here it was a transfer of the deposit
on the books of the bank.    It was the same as if he had drawn the
money and then deposited it in his brother's name, which is the same
as if he had then so deposited it for the first time.    No doubt a de-
livery of the money to the treasurer for the donee is a sufficient de-
livery under such circumstances.    And as said in *Barker* v. *Frye*,
"when the change of entry was made thus giving authority to the
bank to pay to the donee, it was a more effectual delivery than if an
unassigned pass-book had been given to the donee."

Much more serious questions arise when we inquire whether Jo-
seph J. Bowman ever intentionally parted with all dominion and con-
trol over this fund in the savings bank, and whether he intended
this transaction to take full effect as a gift in his own lifetime.    The
answer to these questions must be found chiefly in the two or three
letters written by him which are made a part of the case.    The fact
that he retained the deposit book is not conclusive, though it has
some weight.    But in his letters we think we can discover his inten-
ion, although they are the letters of an illiterate man, a man who
apparently was unable to express himself clearly in writing, and
whose statements in these letters are sometimes obscure and confused;
and although his expressions are not in all respects consistent with
each other.

We think that a fair interpretation of his language justifies the fol-

lowing conclusions as to his purpose and intentions. He wanted Martin's children to have the money when he was gone. So he told Treasurer Dudley. To accomplish this purpose he transferred his account in the bank to Martin. He did not intend by this act to devest hinself of all beneficial interest in the deposit. He did not intend it as a gift, immediate and absolute. He intended to receive the interest as long as he lived, "to live on." The expression, "If I should be taken away, it is yours," his proposal to give Martin a writing, "so that you will have something to show," "now you will have it show when I am gone," his declaration that he wanted to "secure this fifteen hundred to you in case of my death,"—all show that he did not intend to make an absolute gift, in presenti. Though he had transferred the deposit, he retained the deposit book. He seems to have supposed that he could still draw the money. For these reasons, we think that the transaction did not amount to a gift.

It still remains to inquire whether he created a valid trust. We think he did. It is true that if the transaction was intended as a gift in presenti, but was imperfect, as for want of delivery, a trust cannot now be substituted for the gift. If it was intended to be a gift inter vivos, whether it was perfect or imperfect, it was not a trust. *Norway Savings Bank* v. *Merriam*, 88 Maine, 146. On the other hand, if the transaction was not intended to be a gift, it might constitute a trust.

To return again to the facts in this case. Joseph Bowman had two concurrent purposes. One was to secure the money after his death to his brother Martin's children; and the other, to secure the income for himself, during his lifetime. How did he attempt to accomplish these purposes? He placed the money to the credit of his brother in the bank. He made the declaration to his brother that the money, after the brother's death, must be divided equally among the brother's children, that he had transferred the money with that "understanding." He reserved the interest during his own life. There is nothing equivocal about the purpose of the transfer, or in the language which declared it. The brother took no immediate beneficial interest. Joseph was to have the income as long as he lived, and the principal was to be kept afterwards for Martin's children. If Martin accepted

the proposal, he became trustee of the fund, subject to these two express trusts. Martin did accept. He made a definite proposal to pay even more interest than the fund was then producing, if the money should be sent to him for reinvestment in Iowa. This appears to have been acceptable to Joseph. All the following steps seem to have been taken with a view simply of taking the money out of the bank where it stood in Martin's name and sending it to Iowa.

The creation of a trust is but the gift of the equitable interest. An unequivocal declaration as effectually passes the equitable title to the cestui que trust, as delivery passes the legal title to the donee of a gift inter vivos. One may constitute himself trustee by mere declaration. *Bath Savings Institution* v. *Hathorn,* 88 Maine, 122, 51 Am. St. Rep. 382, 32 L. R. A. 377; *Norway Savings Bank* v. *Merriam,* supra. In the case at bar there were both deposit and declaration.

The character of this transaction was completely determined when Martin accepted the trust. The money may have been affected by the trust without Martin's acceptance. But the trusteeship itself was undetermined. However, when Martin consented to act under the terms of the trust as declared by Joseph, he became trustee and the trust was complete.

In order to create a trust, it is not essential that all steps be taken at one time. The declaration may follow the deposit. The declaration may at first be conditional or provisional, or tentative. As in this case, Joseph's first declaration may have been intended to be conditional on Martin's acceptance of the trust according to its terms. If ultimately, as the result of continued negotiations, the conditions are eliminated, and the provisions are settled, so that the declaration becomes unequivocal, that is sufficient. We may, therefore, look through the several letters written by Joseph at different times, to find his declaration of the purpose of his transfer of the deposit. Taken all in all, we have no doubt that this purpose was for Martin to hold it in trust for the benefit of Joseph in his life time, and later for the benefit of Martin's children. Thus he unequivocally declared.

The validity of the trust, if sufficiently created, is not affected by the fact that Joseph reserved the income of the trust fund during

life.  He might even have made himself trustee, and reserved the income.  *Norway Saving Bank* v. *Merriam,* supra.

A single Justice may enter a decree below that the plaintiff be paid its taxable costs, and such reasonable counsel fees as may be allowed to it, out of the fund; that the balance of the fund be paid to the claimant, Martin T. V. Bowman; and that said Bowman recover his taxable costs of the defendant Titcomb, who may have them allowed to him upon the settlement of his account as executor.

*Decree accordingly.*