IDA A. TURNER *vs.* ELLEN J. McMANUS, Admx.

JULY 2, 1915.

PRESENT: Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

*(1)   Equity.   Parent and Child.   Gifts.   Fraud.*

On a bill in equity to recover a deposit, it appeared that the father of complainant deposited in her name when a child, a sum of money, the bank book being issued in the name of the complainant; for several years the father continued to make deposits, increasing the account. At the time of the original deposit the father took the book for safe keeping and it was kept for a time in a place where complainant had access to it and later in his safe. After the marriage of the complainant the father requested her to go to the bank to have the deposit changed to her married name. Complainant signed her name as she claimed relying upon her father's statement, and without reading what she signed. Upon leaving the bank she learned that the deposit had been changed to his name he stating to her that he would continue to add to the deposit and would see that it was given back to her. The father deceased.

*Held,* that the facts were sufficient to show the intention of the father to create a gift.

*Held,* further, that the trial court was not justified in finding the issue of fraud in inducing complainant to sign the instrument withdrawing the deposit, against complainant, since upon the evidence complainant might be justified in placing confidence in the statement of the father.

*Held,* further, that the decree of the court dismissing the bill would be reversed.

BILL IN EQUITY. Heard on appeal of complainant and sustained.

VINCENT, J. This is a bill in equity brought by the complainant, Ida A. Turner, wife of William R. Turner, of

Providence, against Ellen J. McManus, widow and administratrix of Patrick McManus. The complainant is the daughter of Patrick McManus by a former wife. The bill seeks to have the respondent as administratrix repay to the complainant the amount of a certain deposit in the Providence Institution for Savings which now appears upon the inventory of the estate of Patrick McManus as an asset of his estate.

The first wife of Patrick McManus died upwards of ten years ago, leaving four children, including the complainant. From the death of the first wife the complainant and her older sister kept house for the father and the other two children up to the time of the father's second marriage, a period of some ten years. The complainant was married in July, 1910, and Patrick McManus, her father, died in December, 1911.

In June, 1904, Patrick McManus went to the Providence Institution for Savings, accompanied by his four children, and made deposits of money in the name of each. At that time there was deposited in the name of Ida McManus, the complainant, the sum of $94.43. For this deposit the usual bank book was issued in the complainant's name. From that time up to the year 1910, Patrick McManus made other deposits to the account of the complainant until the whole sum thus deposited, together with accumulated interest, amounted in July, 1910, to the sum of $1,909.68.

The marriage of the complainant to William R. Turner in June, 1910, was, as appears from the evidence, somewhat unsatisfactory and displeasing to Patrick McManus, but his dissatisfaction and displeasure seems to have resulted more from the manner or method in which the marriage was effected, the ceremony having been performed by a justice of the peace in New York, rather than from any personal objection to the husband.

The complainant returned from New York the day following her marriage and shortly thereafter had one or two interviews with her father during which there was no men-

tion of the bank deposit and such interviews are therefore not important in the discussion of the issues here. About a week after the complainant returned, her father sent for her and she met him at his place of business. He then handed to her the bank book, requesting her to accompany him to the bank for the purpose of changing the deposit from her maiden name to her married name, he afterwards taking charge of the book at or on the way to the bank and attending to the business transacted there. The complainant testifies in detail as to the occurrences at the bank, as to her compliance with the request of her father and the bank clerk to sign her name, which she did without reading what she signed, supposing and relying upon her father's statement that only the change of name suggested by him was being effected.

After leaving the bank a further conversation about the matter with her father ensued and she then learned that the deposit had been changed to his name, he stating to her, at the same time, that he would continue to add to the deposit and would see that it was given back to her.

At the time of the original deposit in June, 1904, Patrick McManus, at his own suggestion, took the bank book of the complainant as well as the bank books of the other children for safe keeping. The evidence shows that they were kept for a time in the bureau drawer where the children had full access to them and that later, when the father procured a safe, they were placed therein for better protection.

The complainant and her husband also testify to several interviews with the father, Patrick McManus, in which he reiterated his former statement that he would add to the deposit of the complainant and see that it was given back to her. The complainant, as she testifies, did not at any time after the change of the deposit to the name of her father make any demand upon him to change it back again, evidently relying upon his undertaking and promise to do so.

Patrick McManus died suddenly in December, 1911, without having carried out his promise to the complainant to

give back to her the deposit in the bank and without having made any provision which would enable the complainant to obtain the deposit or any part thereof. His second wife was appointed as administratrix upon his estate.

The complainant filed her claim against her father's estate in the probate court and the same was disallowed by the administratrix.

Under these conditions, the complainant brought her bill setting up the facts substantially as stated, alleging fraud on the part of her father in changing the deposit from her name to that of his own name at the Providence Institution for Savings and praying that said fund of $1,909.68 with interest thereon from the 20th of July, 1910, may be declared to be the property of the complainant, and that Ellen J. McManus, administratrix as aforesaid, may be ordered and required to pay the same to the complainant, etc.

The respondent in her answer admits her appointment as administratrix; the custody of the book of deposit and that the same was inventoried as a part of the estate of the intestate; that Patrick McManus at the time of making the deposit and at the time of his decease was solvent and able to pay his liabilities out of his personal estate and have left therefrom a large surplus; that due notice was given of her appointment as administratrix; that the complainant filed with the municipal court of the city of Providence her claim against the estate of Patrick McManus of $1,909.68 with accrued interest thereon; that said claim was disallowed by her; and that she has since refused and still does refuse to pay the same to the complainant, although often requested so to do. The respondent neither admits nor denies the other allegations of the bill and leaves the complainant to prove the same, etc.

The case was referred to a Master to frame issues of fact. The same were duly framed and upon a submission of a draft report of the Master the issues were agreed to and accepted by the respective counsel in the case. These issues are as follows:

"I. Did Patrick McManus prior to his death deposit a sum of money in the Providence Institution for Savings in the name of Ida A. McManus and deliver the pass book therefor to said Ida A. McManus, intending to give the account thereby represented to said Ida A. McManus?

"II. If the answer to the above question is yes—

Did Patrick McManus falsely deceitfully and fraudulently induce Ida A. Turner (formerly Ida A. McManus) to sign an instrument withdrawing said account from said Institution for Savings and also falsely deceitfully and fraudulently prevent said Ida A. Turner from receiving the same when so withdrawn?

"III. If the answers to the above questions are yes—

Did Patrick McManus take the sum of money withdrawn as above, cause it to be deposited in the said Institution for Savings in the name of Patrick McManus and keep said account in said Institution for Savings up to the time of his death?"

Upon these issues testimony was offered by the complainant and at the close of the complainant's testimony the respondent moved that the bill be dismissed on the ground that the complainant had failed to prove the fraud alleged.

This motion was granted by the Superior Court on the ground that the complainant had failed in the first place to prove that the book was delivered to her with the intention of creating a gift and that it seemed quite as consistent that the father may have used his children as a means of keeping certain moneys in bank as it was that he intended to give them money.

There was no testimony whatever of any desire or purpose on the part of the father to deposit moneys in the bank in the name of his children and at the same time retain the same for his own use. We do not think that this conclusion is warranted from the testimony. We think that the circumstances of the whole transaction, as revealed by the testimony, are sufficient to show the intention of Patrick McManus to create a gift. The court below concludes in

the second place that it is not shown that the father fraudulently and deceitfully induced the complainant to sign the instrument changing the account to his own name, although he stated to her that the purpose of the visit to the bank was to change the deposit from her maiden name to her married name.

It is not surprising that the complainant should be led to place implicit confidence in the statement of her father. The change of deposit from her maiden name to her married name would be proper and would sound reasonable to anyone, especially being closely associated with the further expressed intention of the father to increase the amount from time to time and to see that the deposit was given back to her. With these statements she might easily be disarmed of all suspicion and even fail to realize that there would be any necessity for her examination of the instrument which she executed at the bank.

The complainant's appeal is sustained, the decree of the Superior Court is reversed, and the case is remanded to said Superior Court for retrial unless the parties choose to stand upon the evidence adduced at the hearing, in which event a decree should be entered for the complainant in accordance with this opinion.

*William S. Flynn, McGovern & Slattery,* for complainant.
*Cooney & Cahill,* for respondent.