McKinnon v. The First National Bank of Pensacola—Syllabus.

*J. M. Sapp,* for Plaintiffs in Error;

*W. C. Price,* for Defendant in Error.

PER CURIAM.—This cause having been submitted to the Court at a former term upon the transcript of the record of the judgment aforesaid and argument of counsel for the respective parties, and the record having been seen and inspected, and the Court being now advised of its judgment to be given in the premises, it seems to the Court that there is no error in the said judgment; it is, therefore, considered, ordered and adjudged by the Court that the said judgment of the Circuit Court be, and the same is hereby affirmed.

All concur.

_____

ALLEN ALEXANDER MCKINNON, BY LEE DANIELL, HIS NEXT FRIEND *Appellant,* v. THE FIRST NATIONAL BANK OF PENSACOLA, A CORPORATION, *Appellee.*

Opinion filed May 30, 1919.

Petition for Rehearing denied July 29, 1919.

1.  In order that the deposit of money in a bank to the credit of another person shall operate as a valid gift *inter vivos,* it must appear not only that the depositor intended a gift, but also that he executed his intention, and there must be an acceptance of the gift by the donee. But where a gift made to an infant is beneficial and not burdensome the law will presume acceptance.

2.  A natural guardianship as such, confers no right to inter-
    meddle with the property of an infant, but is a mere per-
    sonal right in the father or other ancestor to the custody of
    the person of his heir apparent or presumptive until at-
    taining twenty-one years of age.

3.  A guardian by *nature* is entitled to the charge only of the
    *person*, and not of the *personal estate* of the ward.

An Appeal from the Circuit Court for Escambia Coun-
ty; A. G. Campbell, Judge.

Judgment reversed·

*Watson & Pasco* and *John C. Avery*, for Appellant·

*E. C. Maxwell*, for Appellee.

BROWNE, C. J.,—This is an action brought by a minor
by his next friend against the First National Bank of
Pensacola for an accounting and payment of complain-
ant's claim against the bank.  There are four cases pend-
ing before this court with identical pleadings and testi-
mony.

Alex McKinnon, the father of the appellant deposited at
divers time for several years in the savings department of
the First National Bank of Pensacola, various sums of
money to the credit of each of his four minor children.
The pass books show that on some occasions he would
make deposits to the credit of two of the children on the
same day, and at other times to only one of them.  Indi-
vidual pass books were issued in the names of the four
minor children, and signature cards left with the bank
indicating how checks against the acocunts should be
signed.  The cards of Ethel B. McKinnon, and Martel C·

McKinnon contain their names by Beulah F. McKinnon, while those of Eleanor W. McKinnon and Allen Alex McKinnon contain their names only. Ethel and Martel McKinnon's cards seemed to have been signed by the same person, and are in a different handwriting from those of Allen Alex McKinnon and Eleanor McKinnon.

The deposits to the credit of the children with interest amounted to something over eleven thousand dollars, was drawn by the father and loaned to the president of the bank, taking his individual notes payable to each of the children from whose account the money was taken. These notes were never paid. None of the children had a legal guardian. None of the checks on which he drew out the money was signed by any of the children or in the manner indicated on the identification cards.

The father, Alex McKinnon, carried an account in his own name. He also from time to time deposited money to the credit of his wife's account.

Two of the children, aged respectively fifteen and seventeen years, testified to having had pass books in their possession; that they had been shown to them by their father who said they belonged to them, and told them that he put the money in the bank for them. The books were at one ime kept in a drawer, and later in a vault in their home, to which all the family had access at all times and opened the vault whenever they wished to; that they never signed any checks or drew out any money from the bank except on one occassion when they each asked their father to get twenty or twenty-five dollars for them from their money in the bank. Both are quite positive and clear in their testimony that their father from time to time handed them the deposit books containing entries of

deposits made by him in their names, and they frequently heard him say that the money which he had deposited to the credit of their accounts and to their brothers', was theirs as gifts from him.

Mrs. Beulah McKinnon, wife of Alex McKinnon, the mother of the minor children testified that her husband when he made deposits of money to the account of the children, gave it to them; that she saw the pass books showing these deposits from time to time, and that several times he gave them to her and she would put them away in the vault. That he deposited money in her name in the bank to the credit of her account, and that sometimes she let him draw some of it. She was quite positive that her husband said that he gave the money so deposited to her and the children, and frequently when he made a deposit to the credit of the children he would tell them that he had deposited the money for them.

In order that the deposit of money in a bank to the credit of another person shall operate as a valid gift *inter-vivos,* it must appear not only that the depositor intended a gift, but also that he executed his intention, and there must be an acceptance of the gift by the donee. But where a gift made to an infant is beneficial and not burdensome the law will presume acceptance. Davis v. Garrett, 91 Tenn. 147, 18 S. W. Rep. 113. Or as some courts say "the law accepts it for him." Copeland v. Summers, 138 Ind. 219, 35 N. E. Rep. 514; DeLevillian v. Evans, 39 Cal. 120.

In the course of their examination the two children, Martel and Ethel McKinnon, said the money was to be theirs at the age of eighteen years, and upon these replies the appellee predicates most of his argument that in

VOL. 77, JANUARY TERM, 1919. 781

McKinnon v. The First National Bank of Pensacola—Opinion of Court.

making the deposits the father did not intend the money to be theirs until each attained the age of eighteen years.

In view of all the other testimony and the circumstances surrounding the transactions tending to show that the father when he made the deposits intended them to be free gifts to his children, we do not think that what these two very young persons said in this connection, is conclusive of the question.

To accept that view we would be presented with this condition :Mr. McKinnon told his wife and children that he gave them the money when he deposited it to their credit; and then said, but I am not going to give it to you until you are eighteen years of age; or more tersely put, "I give you this money, but am not going to give it to you now." This is almost a *reductio ad absurdum.*

A more reasonable and natural conclusion to be drawn from the evidence and one that seems quite clear to us, is that the father intended when he deposited the money in the bank that it should be an absolute gift to the children, but did not intend for them to acquire extravagant habits by permitting them to use the money as they pleased before they were eighteen years old. This as their natural guardian he had the right to do, and if the gifts had been made by a third person he could have controlled his children in its expenditure until they reached an age when he considered it was advisable for them to use it as they saw fit. What was said about the children having the money when they were eighteen years of age in the light of all the circumstances relates to the control he intended to exercise over their expenditure of money already theirs, and not the time when he intended it to become theirs.

This case hinges upon the question whether the father at the time he made the deposits to the credit of the children intended them as free gifts as of the dats of the deposits. If so, the funds became the property of the infants, and he lost dominion over it and it passed completely out of his control as their natural guardian. "This guardianship confers no right to intermeddle with the property of the infant but is a mere personal right in the father or other ancestor to the custody of the person of his heir apparent or presumptive until attaining twenty-one years of age." 1 Lewis' Blackstone, 435, N. 4; Dagley v. Tolferry, 1 P. Wms. 285; Genet v. Tallmadge, 1 Johns, Ch. (N. Y.) 2; Jackson v. Combs, 7 Cowen (N.Y.) *36; Hyde v. Stone, 7 Wend. (N. Y.) 354; May v. Calder, 2 Mass. 55; Miles v. Boyden, 3 Pick. (Mass.) 213.

The case of Linton v. Walker, 8 Fla. 144, while not decisive—the views of the Chief Justice on this question not being concurred in by the other justices—lays down the law as we find it to be, and is in accord with the weight of the authorities, that "A guardian by *nature* is entitled to the charge of only the *person* and not of the *personal estate* of the ward." Hyde v. Stone, and other cases cited *supra*.

A number of case are cited on both sides which are not necessary for us to discuss. Most of those referred to by the appellee relate to gifts to adults, and shows facts and circumstances from which the courts held that they did not establish and absolute and irrevocable gift. These cases are interesting but not determinative, as the facts and circumstances before us are different from those in the cases cited. One wherein the facts more clearly fit the case that we are considering is that of Gardner v. Merritt, 32 Md. 78, 3 Am. Rep. 115, cited by appellant. In

that case as in this the donor had an individual account in her own name in addition to those which were carried in the name of the donees to whose credit she made deposits.   There the Court said: "During the. same period when she was making these deposits in the names of her grand-children she was also making similar deposits in the same bank in her own name; that is, she was depositing to separate accounts in the names of each of the grand-children, and at the same time to a separate account in her own name, which had been opened long before in 1856, and was continued until her death.   If she intended that all the moneys were her own and deposited to her own credit, it is hard to conceive her purpose in requiring five accounts to be kept, one in the name of each of the infants, and the sixth in her own name.   It is argued that her purpose was to indicate thereby an intent to make future gifts of the money to the children, but there is no proof upon which the argument can rest."

In the case we are considering, we not only have the uncontradicted testimony of the two young girls and the mother that Alex McKinnon repeatedly declared that in making these deposits in the names of his children that he was making them a free gift of the money, but the circumstances surounding the transaction carry conviction that such was his purpose.   One of the strong circumstances is that when he drew out the money to lend to the president of the bank, he caused the notes to be made payable to each minor child from whose account the money was taken.

Another circumstance that is called to the attention of the court by the appellee, is that the donor, the father, was present at the taking of the testimony and heard his children and his wife testify that when he deposited

784          SUPREME COURT OF FLORIDA.

McKinnon v. The First National Bank of Pensacola—Opinion of Court.

money in the bank in the names of his children he would show or hand them the deposit books and tell them that he had done it as a free gift to them, and did not take the stand and deny any of their testimony. From all the facts and circumstances surrounding this case, we are satisfied that McKinnon at the time he made the deposits in the bank to the credit of his children, intended the money so deposited to be a free gift to them; and there is nothing in the testimony to show that there was any understanding or agreement betwen him and the bank that he was to keep control of the funds, and dispose of them as he saw fit. The money passed absolutely and irrevocably from his custody and control and the bank had no authority to pay it out on his order.

The judgment is reversed.

TAYLOR, WHITFIELD, ELLIS AND WEST, JJ., concur.