## Motley's Administrators v. Tabor, et al.

(Decided May 5, 1925.)

### Appeal from Allen Circuit Court.

1. Trusts—"Constructive Trust" Defined.—A constructive trust is one not created by any words, either expressly or impliedly, evincing a direct intention to create a trust, but by construction of equity in order to satisfy demands of justice.

2. Husband and Wife—Portion of Joint Estate Placed in Bank to Credit of Wife Presumed to be Hers—Presumption Not Overcome by Husband's Statement to Contrary.—Where an estate is accumulated by joint efforts of both husband and wife, that portion placed in bank to wife's credit will be presumed to represent her portion of earnings and to be her separate estate, and husband's statement to others that he placed it to her credit so that she might have money on hand if he died first will not overcome such presumption.

3. Trusts—Husband Appropriating Wife's Money Treated as Holding it in Trust.—Husband who had been intrusted with control of wife's funds, and who without any administration of his wife's estate appropriated entire fund to his own use, would be deemed to hold money in trust for those entitled to share in his wife's estate.

OLIVER & DIXON for appellants.

RODES & HARLIN and W. D. GILLIAN for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Serena Motley died intestate in the year 1915. She was survived by her husband, H. T. Motley, and by a sister and some nieces and nephews, who were her only heirs at law. No administration was had on her estate prior to the death of her husband, and in the year 1921 her husband died and T. H. Motley and J. T. Motley were appointed and qualified as administrators of his estate.

This suit was brought by the heirs of Serena Motley against the estate of her husband to recover the sum of $7,000.00, on the ground that it was held by him in trust for his wife and had never been accounted for. During the progress of the action Y. Tabor, who had qualified as Mrs. Motley's administrator, was made a party plaintiff and united in the prayer of the petition. On final hearing the chancellor sustained the claim of plaintiffs to the extent of $2,000.00 and interest for a period of eight years, amounting in all to $2,960.00 and rendered judgment for that amount. H. T. Motley's administrators have appealed.

The evidence in support of the trust is as follows: Y. Tabor, the brother of Mrs. Motley, testified that his father died in 1865, and that according to his best recollection each of the children received from their father's estate between $800.00 and $1,000.00. There was also evidence to the effect that Mrs. Motley had on deposit

in the bank of J. P. Potter & Sons, when it went into bankruptcy, the sum of $2,400.00, and that she was paid 49% of the amount. A. S. Gardner testified that during his connection with the Allen County National Bank Mr. Motley carried a checking account and time deposit. Mr. Motley also carried a time certificate in the name of his wife, and he was under the impression that the amount of the certificate was $2,000.00. After Mrs. Motley's death, Mr. Motley renewed the certificate in his own name. He could not say positively, but was under the impression that this was the certificate that he had carried in the name of his wife. In attending to business at the bank Mr. Motley always indorsed his wife's name by him. On cross-examination he said that he could not pretend to state that the money placed in the bank to the credit of Mrs. Motley was her separate estate. So far as he knew it may have been money Mr. Motley placed there for her. He did not know whether Mrs. Motley was ever in possession of the certificate or not. In carrying on the transactions Mr. Motley never used the word "trustee," but merely said that he wanted to place the money there on time for his wife. During the time that he worked for the Motleys, Asberry Pearson said that Mrs. Motley raised a lot of chickens and sold a quantity of eggs, butter and produce from the farm. At times he saw her give Mr. Motley money to put in the bank. They kept their money in the same pocketbook. He did not know whether the money Mrs. Motley gave her husband to put in bank was hers or not. Major Williams, who kept a store at Halifax, testified that the Motleys bought groceries and supplies at his place and always paid therefor with produce; that both Mr. and Mrs. Motley were very industrious and sold him a quantity of produce, butter, eggs, etc. J. R. Reynolds testified that he lived near the Motleys and that both of them were industrious and good business people. About 21 years before he testified, he borrowed $2,500.00 from Mr. Motley. At that time Mr. Motley said that he did not have enough money, but would go to the Potter Bank and draw $1,000.00 of Serena's money. One of the bank officers suggested that, as the money had been recently deposited, Mr. Motley would lose the interest on it if it were drawn out and that he had better borrow the $1,000.00 to make up the balance due on the loan, and this was done. At one time witness had a conversation with

Mr. Motley, who stated that the Potter Bank got nearly all of Rena's money, but it did not hurt him very much. On cross-examination witness said that Mr. Motley stated that his wife had on deposit at the Potter Bank about $2,000.00. Mrs. Motley had no way of accumulating money except from chickens, eggs, etc. Whether Mrs. Motley had any separate estate or not, he did not know. J. W. McGuire testified that on two occasions he borrowed $10.00 from Mrs. Motley, and at that time Mr. Motley was not at home, and witness stated his business and Mrs. Motley let him have the money. On one occasion Mr. Motley was giving witness advice as to how to start in life after he was married, and said that he and his wife had put together what they had and had added to it. On one occasion J. W. Buchannon went to Mr. Motley for a loan of $2,100.00 and Mr. Motley said he did not have the money. This was in 1907. Mr. Motley stated at the time that when the Potter Bank went down Rena had $2,400.00 in the bank.

For the Motley estate T. H. Motley, one of the administrators, testified that he examined all the papers of every kind belonging to the estate and found nothing to indicate that H. T. Motley had any property belonging to his wife. He further stated that he assisted H. T. Motley in his business transactions for a number of years and that he knew nothing of Mrs. Motley's having a separate estate of her own. He further testified that his uncle told him that he had put $2,400.00 to Aunt Rena's credit so that she would have some money on hand if he died. At the time of his death Mr. Motley had an estate of about $40,000.00. John T. Motley, the other administrator, testified that he examined all the papers belonging to H. T. Motley and that Mrs. Motley's name was not mentioned in any of them. His uncle told him that he had put $2,000.00 in the old Allen County National Bank to Mrs. Motley's credit so that she could have the money in case he died. Mrs. Bettie Williams testified that Mrs. Motley told her that Henry had put $2,400.00 in the Scottsville Deposit Bank, so that she could have it and use it in case he died before her. Mr. Motley also told her that he had put $2,000.00 in the bank at Scottsville, so that Rena could have it and use it in case he died first. Tom Willoughby, who was assessor for the county, testified that no property was ever listed in the name of Serena Motley.

As neither an express trust, nor a resulting trust, was shown, the only question we need consider is whether the facts are sufficient to establish a constructive trust. A constructive trust is one not created by any words either expressly or impliedly evincing a direct intention to create a trust, but by the construction of equity in order to satisfy the demands of justice. Currence v. Ward, 43 West Virginia, 367, 27 S. E. 329. They are entirely *in invitum* and forced upon the conscience of the trustee for the purpose of working out right and justice or frustrating fraud. Robinson v. Pierce and Stone, 118 Ala. 273, 24 So. 984, 72 Am. S. Rep. 160, 45 L. R. A. 66; Scadden Flat Gold Mining Co. v. Scadden, 121 Cal. 33, 53 Pac. 440. They are sometimes called trusts *ex maleficio* or *ex delicto* or involuntary trusts, and their forms and varieties are practically without limit. 39 Cyc. 169, 170. Mr. and Mrs. Motley were life partners for a great many years. They were an industrious and economical couple and the evidence leaves no doubt that she did her part in the accumulation of the joint estate. When the Potter Bank went into bankruptcy many years ago she had on deposit in that institution a large sum. She afterwards proved her claim and recovered 49% of the deposit. Later on, there was a certificate of deposit in her name in the Allen County National Bank, and all the facts and circumstances tend to show that it was there at the time of her death. It seems that Mrs. Motley entrusted the making and handling of the deposits entirely to Mr. Motley, who acted as her agent in the matter. Where an estate is accumulated by the joint efforts of both husband and wife, that portion placed in bank to the wife's credit will be presumed to represent her portion of the earnings, and to be her separate estate, and mere evidence that the husband stated to others that he placed it to her credit in order that she might have money on hand in case he died first will not be sufficient to overcome the presumption. Assuming as we must, and as the chancellor found, that the certificate of deposit belonged to Mrs. Motley, the case is one where Mr. Motley, who had been entrusted with the control of the fund, without any administration on his wife's estate, took possession of the entire fund and appropriated it to his own use. Had he done this while acting as his wife's agent equity would have enforced a constructive trust in her favor, and, as he assumed to act by virtue of that agency after her death and was thereby enabled

to appropriate the whole fund to his own use, no reason is perceived why he should not be treated as holding the money in trust for all those entitled to share in his wife's estate.

Judgment affirmed.