## Collins et al. v. Collins' Administrator et al.

(Decided December 1, 1931.)

HENSON & TAYLOR for appellants.

PENTECOST & DORSEY and VANCE & HEILBRONNER for appellees.

OPINION OF THE COURT BY JUDGE WILLIS—Reversing.

The crucial question in this case is whether a gift is accomplished by the deposit of money in a savings account in the name of infants, when accompanied by proof of subsequent statements of the depositor indicating an intention to pass title to the money, even though the depositor made withdrawals from the account for his own purposes.

James Urey Collins was married twice, had three children, and died intestate. James Verbal Collins and

Clara Louise Collins were children of his first wife, who had died on June 14, 1922. Laverne Collins is the child of the second wife, Ruth Collins, who is the widow of James Urey Collins. In this action to settle the estate, the Henderson National Bank, as administrator of the estate of James Urey Collins and as guardian of Laverne Collins, together with the widow, Ruth Collins, were the plaintiffs, and the Farmers' Bank & Trust Company, guardian of James Verbal Collins and of Clara Louise Collins, and other necessary and proper parties, were the defendants. A controversy arose over the ownership of certain funds deposited in various banks in the names of James Verbal Collins and Clara Louise Collins, and also over a certain lot and brick storehouse, title to which was in the name of the deceased, James Urey Collins, but which was purchased with a check on the savings account standing in the name of J. V. and C. L. Collins. The widow and her infant child claimed that the deposits and the storehouse lot belonged to the estate of Collins, whilst the two children of the first wife asserted ownership in themselves. The circuit court decided that all the property in controversy belonged to the estate of James Urey Collins, and an appeal has been prosecuted on behalf of the two older children.

James Urey Collins had a savings account in his own name at the Henderson National Bank prior to October 10, 1925. On that day he changed the deposit to the names of C. L. and J. V. Collins. Thereafter, James Urey Collins added to the account and made withdrawals therefrom. The withdrawals were made by checks signed "C. L. and J. V. Collins." In every instance the signature on the check was written by James Urey Collins, and in some instances he put thereon the words "By J. U. Collins," immediately following the signature. Printed under the signature on the checks were the words "owner of the pass book." The balance in the account when Collins died was $2,843.42. Collins once had a checking account in his own name at the Henderson National Bank. It began on July 22, 1919, with a deposit of $100, and was exhausted by a check for $11.25 paid on April 25, 1928. Deposits were made occasionally and checks were drawn on that account from time to time. The balance increased until it reached $2,200, and then gradually diminished until it was exhausted.

Collins opened a savings account at the Ohio Valley Savings & Trust Company in the name of C. L. and J.

V. Collins on June 24, 1920, and accumulated $3,200 therein, which was withdrawn by Collins on June 20, 1927. A savings account was then opened at the Farmers' Bank & Trust Company in the names of "C. L. or J. V. Collins by J. U. Collins." That account began with a deposit of $3,200 on June 20, 1927, and was gradually reduced by withdrawals to $1,232.77, which was the balance shown by the savings account book on October 2, 1929. The savings account books were kept by Collins in a tin box at his home. On October 3, 1927, Collins drew a check on the savings account in the Henderson Notional Bank for $6,750 which was payable to the order of Geo. W. Stone, and was marked "payment in full for property on Elm Street." The deed, however, recited that a lien of $5,000 upon the property was assumed by the purchaser. The check was signed by Collins in the names of "C. L. or J. V. Collins"; his own name not appearing. The deed from Stone and wife conveyed the title to J. U. Collins.

Clara Louise Collins testified that her mother died June 14, 1922, and that her father remarried in 1927; that her father had been engaged for many years in the restaurant business and that her mother, during her life, worked in the business with him. The witness was known as C. L., and her brother was known as J. V., Collins. She was 17 years old, and her brother was two years older. She was familiar with the pass books and had carried them to the bank for the purpose of making deposits with money furnished by her father. She knew that the deposits were being made in the names of herself and brother, and consented thereto. When she returned from the bank with a pass book she returned it to her father, who took care of it. Her father kept the savings account books in a tin box at home.

James Verbal Collins testified that his mother worked in the restaurant with his father, that he knew of the pass books, and of the deposits, and that it was satisfactory and agreeable to him.

W. P. Bond testified that he sold a truck to James Urey Collins in 1925 which was paid for by a check signed by C. L. and J. V. Collins, drawn on the Henderson National Bank. Collins stated to him that he did not know whether he had sufficient funds in the little Henderson County Savings Bank to pay for the truck, and, if not, he would have to get a check on the Henderson

National Bank which his children would have to sign because it was theirs.

Mrs. Anderson, a sister of the first Mrs. Collins, testified that Mrs. Collins assisted her husband up to the time of her death in the operation of the restaurant. She testified further that J. U. Collins had told her about putting the money in the savings accounts in the names of his two older children, and that he was going to fix it for them; that everything he had in money he had deposited in the names of Louise and Verbal, and that their mother had helped to make it, and he intended for them to have it. He also stated that the business was so tangled up that he could not sell it. The various statements were made by Collins a few months before his death.

Mrs. McCormick, maternal grandmother of the appellants, testified that the two children had lived with their father and mother until the mother's death, and continued thereafter to live with their father until his death. She heard the statements testified to by Mrs. Anderson, and heard Mr. Collins say that what he had was cash and was for his children; that he wanted them to have it, and did not want any one else to have it, because their mother had helped to make it. The witness said Collins referred to the money he had in the bank, which was for the children, and he wanted them to have it.

C. V. Hawkins testified that he had seen Mr. Collins twice during 1929, and on both occasions they discussed business affairs. Collins stated that he had his money in the bank for the children and meant for them to have it, and exhibited a pass book. In the two conversations, he stated that when he bought certain property he took money out of the bank that belonged to the children, had the deed made to himself, and therefore he could not sell it.

Neither C. L. nor J. V. Collins signed any check, or knew that any check had been drawn, and, of course, did not consent to the withdrawals.

The defendants produced the testimony of the officers of the bank to the effect that the deposits were made by James Urey Collins, that the checks were drawn by him, and that they know no one else in connection with the accounts. The clerks at the various banks did

not corroborate Clara Louise Collins that she had made deposits, but stated that what was done by the bank in keeping the accounts and handling the money was done at the direction of the deceased. No such notations were placed on the pass books. The clerk at the Farmers' Bank & Trust Company had a notation on the margin of the loose leaf account book kept at the bank, to the effect that the checks were to be signed only by James Urey Collins. Collins himself made all the deposits and withdrawals. Other witnesses testified that they were close friends of James Urey Collins, were with him a great deal, and that he did not mention his accounts, or indicate to them what he had done, or what he desired in respect thereof. One of the witnesses testified that an investigation disclosed that the deceased had no checking account in any bank in Henderson. Doubtless he referred to the time subsequent to April 25, 1928, when the checking account at the Henderson National Bank was exhausted. The widow had the key to the tin box in which the savings account books were kept, and it was turned over to the administrator. No canceled checks were found in the box. Apparently they were at the banks, since they are all in the record.

It will be observed that some of the deposits were made after the second marriage, but most of the money was accumulated before the second marriage. About $9,534 had been saved before the second marriage, which was subsequently increased to about $12,943, and then, by withdrawals, reduced to about $2,853.43. These withdrawals included the $6,750 paid to Stone for the Elm street real estate.

A gift of personal property is completed by a delivery thereof, either actual or symbolical, with an intention that the title thereto shall pass and that the future legal power and dominion of the donor over the property shall cease. Bunnell v. Bunnell, 111 Ky. 566, 64 S. W. 420; 65 S. W. 607, 23 Ky. Law Rep. 800, 1101; Taylor v. Purdy, 151 Ky. 82, 151 S. W. 45; Rodemer v. Rettig, 114 Ky. 635, 71 S. W. 869, 24 Ky. Law Rep. 1474; Simmonds v. Simmonds, 133 Ky. 493, 118 S. W. 304; Foxworthy v. Adams, 136 Ky. 403, 124 S. W. 381, 27 L. R. A. (N. S.) 308, Ann. Cas. 1912A, 327; Combs v. Roark, 221 Ky. 679, 299 S. W. 576; Downing v. Whitlow, 211 Ky. 294, 277 S. W. 262.

There may be a gift of money on deposit in a bank by the delivery of the pass book (McCoy v. McCoy, 126 Ky. 783, 104 S. W. 1031, 31 Ky. Law Rep. 1189), but the question here is whether the deposit of the money in the names of the infant donees, coupled with subsequent declarations of a purpose to vest the ownership in them, is a sufficient gift in the face of the fact that the pass books were retained by the donor who exercised authority over the deposits by making substantial withdrawls therefrom. Of course, if the title passed to the infants when the deposits were made, and no power over the money was reserved, the withdrawals were unauthorized, and the dominion asserted was not a lawful exercise of power. McKinnon v. First National Bank, 77 Fla. 777, 82 So. 748, 6 A. L. R. 111; Tucker v. Tucker, 138 Iowa 344, 116 N. W. 119; Gick v. Stumpf, 53 Misc. Rep. 83, 103 N. Y. S. 1109; Turner v. McManus, 38 R. I. 35, 94 A. 667.

This court has held that a deposit by a father of his own money in the name of his adult son, without the son's knowledge, was not a completed gift. Peters' Adm'r v. Peters, 224 Ky. 493, 6 S. W. (2d) 499, 501, 59 A. L. R. 969.

The court noted, however, that a different rule applied when money was deposited in savings banks in the names of infants saying:

"Numerous opinions are to be found dealing with deposits by a person of his funds in the name of another in savings accounts, and these transactions have never been held to be gifts inter vivos unless the evidence disclosed that the donee had knowledge of the transaction and accepted the gift. Meriden Trust & Safe Deposit Co. v. Miller, 88 Conn. 157, 90 A. 228; Succession of Zacharie, 119 La. 150, 43 So. 988; Eastman v. Woronoco Savings Bank, 136 Mass, 208; McKinnon v. First National Bank, 77 Fla. 777, 82 So. 748, 6 A. L. R. 111,—are perhaps typical of this class of cases. The Florida case dealt with infant donees, and the principle that, if the gift to an infant donee he beneficial, the law will presume acceptance aided the court in concluding that the transactions there involved were gifts."

The decision at last, was rested upon the lack of delivery to and acceptance by the son. But that feature is eliminated from the present case by the infancy of the donees, and their assent to the transactions.

In the case of a gift to infants, no formal acceptance is necessary if the gift is to the advantage of the infant, for acceptance will be presumed. 31 C. J., sec. 78, p. 24, Boyle v. Dinsdale, 45 Utah 112, 143 P. 136, Ann. Cas. 1017E, 363.

It is generally held that in order for a deposit of money in a savings bank to the credit of another person to operate as a gift inter vivos of the money to such person, it must appear that the depositor intended a gift, and that such intention was executed, or completed by declarations or acts sufficient to pass title. 12 R. C. L., sec. 24, p. 948. Industrial Trust Co. v. Scanlon 26, R. I. 228, 58 A. 786, 3 Ann. Cas. 863, annotation on page 865. "The donor must part not only with the possession of, but with the dominion over, the property." Geary v. Page, 22 N. Y. Super. Ct. 298. But it has been held that, where there is an express declaration of trust in the donor, the rule requiring cessation of control and dominion by the donor is not applicable. Miller v. Clark (C. C.) 40 F. 15. On the other hand, a declaration of trust by the one who deposits the fund in his own name as trustee, will not of itself be sufficient to prove a gift or voluntary trust, if the fact was not communicated to the person whose name was employed, and there is evidence that the transaction was put in that form for some other purpose. Sherman v. New Bedford Savings Bank, 138 Mass. 581; Burton v. Bridgeport Sav. Bank, 52 Conn. 398, 52 Am. Rep. 602.

When a deposit is made in the name of another, and the pass book is retained by the depositor, and the person in whose name the deposit is made is not advised of the fact, the purpose for which the deposit is made may be shown to rebut the inference that it was intended as a gift. Ide v. Pierce, 134 Mass. 260. There are many cases, however, holding that a gift may be perfected without the delivery of the pass book to the donee, as where the donor declared in unmistakable terms his intention to make the gift, or to divest himself of all dominion over the funds. Supple v. Suffolk Sav. Bank, 198 Mass. 393, 84 N. E. 432, 126 Am. St. Rep. 451. Sayre v. Weil, 94 Ala. 466, 10 So. 546, 15 L. R. A. 544; Gardner v. Merritt, 32 Md. 78, 3 Am. Rep. 115; Milholland v. Whalen, 89 Md. 212, 43 A. 43, 44 L. R. A. 205; Scott v. Berkshire County Savings Bank, 140 Mass. 157, 2 N. E. 925; Howard v. Windham County Savings Bank, 40 Vt. 597.

The custody of the pass book is an important factor when the deposit is in the name of the alleged donor, and it is claimed that such deposit has been transferred to another (12 R. C. L., sec. 23, p. 946), but, when the deposit is in the name of the donee, the possession of the pass book is not so vital as an element in the transaction, and may be explained (12 R. C. L., sec. 24, p. 949; 28 C. J. 663). A deposit in a savings bank in the name of another raises a presumption of an intention to transfer title to the money, and, when the person to whose credit the deposit is made is an infant, acceptance must be presumed. In this case, however, assent and acceptance by the donees is expressly proven, and the custody of the pass book by the depositor is explained by the fact that he had control of the two infant children and was making continuous deposits in the account. If the book had been delivered to the children, it is likely it would have been kept at the place and in the manner it was kept by the father.

In the opinion of the court, in the case of Beaver v. Beaver, 117 N. Y. 421, 22 N. E. 940, 6 L. R. A. 403, 15 Am. St. Rep. 531, cited in Peters v. Peters, supra, and followed in Telford v. Patton, 144 Ill. 611, 33 N. E. 1119, the court suggested various reasons that might induce a person to make deposits in the name of another, such as to escape taxation, to evade a rule limiting the amount of deposits in one name, or to obtain a more favorable rate of interest, or because of some peculiarity of the depositor inducing him to conceal his financial transactions. The existence of such facts, however, should be established, and will not be presumed since they are uncommon, and not the usual concomitants of such conduct. The deposit of money to the credit of another purports on its face to transfer that credit to the beneficiary. Martin v. Funk, 75 N. Y. 134, 31 Am. Rep. 446; Boone v. Citizens' Savings Bank, 84 N. Y. 83, 38 Am. Rep. 498; Willis v. Smith, 91 N. Y. 297; Gaffney's Estate, 146 Pa. 49, 23 A. 163. The presumption that naturally arises from the deposit of money in the name of another will prevail, unless rebutted by countervailing evidence. In a number of cases it has been held that a gift can be established by evidence that the donor deposited money in his own name in trust for the donee, although he retained the deposit book, when he advised the beneficiary that the money was hers. Alger v. North End. Sav. Bank, 146 Mass. 418, 15 N. E. 916, 4 Am. St. Rep.

331; Blasdel v. Locke, 52 N. H. 238; Scallan v. Brooks, 54 App. Div. 248, 66 N. Y. S. 591; Minor v. Rogers, 40 Conn. 512, 16 Am. Rep. 69; Atkinson, Petitioner, 16 R. I. 413, 16 A. 712, 3 L. R. A. 392, 27 Am. St. Rep. 745; Kerrigan v. Rautigan, 43 Conn. 17; Bath Savings Inst. v. Hathorn, 88 Me. 122, 33 A. 836, 32 L. R. A. 377, 51 Am. St. Rep. 382; Hallowell Savings Inst. v. Titcomb, 96 Me. 62, 51 A. 249; Gerrish v. New Bedford Savings Inst., 128 Mass. 159, 35 Am. Rep. 365; Smith v. Ossipee Valley Ten Cents Savings Bank, 64 N. H. 288, 9 A. 702, 10 Am. St. Rep. 400; Ray v. Simmons, 11 R. I. 266, 23 Am Rep. 447; In re Crawford, 113 N. Y. 560, 21 N. E. 692, 5 L. R. A. 71.

It is reasonable to presume from the evidence and circumstances shown in this case that Collins was building up a savings account for his two children, and that, when a deposit was made to that account, he intended it to be their money. There is no evidence that he reserved any power over the fund except his acts in exercising such power, and the statement of the bank clerk that he would continue to make deposits to and withdrawals from the account.

.It is not entirely clear whether the clerk. meant to state the practice of Collins, or referred to a statement of his regarding his intentions. In either event, it is not inconsistent with a gift, since he may have meant merely to manage the account so as to augment the estate he was creating for his children. It was far from a distinct reservation of absolute control over the money for his own benefit. There are cases where the donor reserved for life the right to collect the interest on the account, and the gift was held complete and valid as to the principal, notwithstanding the reservation of a right to receive the income. Smith v. Ossippee Savings Bank, 64 N. H. 228, 9 A. 792, 10 Am. St. Rep. 400; Candee v. Conn. Savings Bank, 81 Conn. 372, 71 A. 551, 22 L. R. (N. S.) 568.

A thorough consideration of the authorities here and in other jurisdictions leads to the conclusion that, in order to perfect a gift by the deposit of money in the bank in the name of an infant donee, it will be assumed that it was intended as a gift, unless that assumption is rebutted by facts indicating a different purpose. If the deposit is accompanied by declarations or acts showing an intention of divesting the donor of all dominion and

14

control over the fund and of vesting it in the donee, it will be given effect as a completed gift.

In this case, the deposits were made by the father of the children from money earned and saved by the joint efforts of both parents. The children were advised of the deposits and assented thereto, and, being infants, their acceptance is presumed, since the gift was beneficial to them. The evidence shows different declarations of the intention of the depositor to give the money to the children. The conclusion is inevitable that the title to the money deposited passed to the infants, and it then became their property. It follows as a necessary corollary from this conclusion that the investment of money drawn from such an account was for the benefit of those who furnished the consideration (Motley v. Tabor, 208 Ky. 702, 271 S. W. 1064; Ringo v. McFarland, 232 Ky. 622, 24 S. W. (2d) 265), and the appellants are entitled to a prior lien on the Elm street property for the sum of $6,750. It will be necessary, however, to charge the appellants as an advancement with all the money and property given them by their father before they can share with the other child in the residue of the undevised estate. Ky. Statutes, sec. 1407. Isgrigg v. Isgrigg, 179 Ky. 260, 200 S. W. 478; Bowles v. Winchester, 13 Bush 19; Crain v. Mallone, 130 Ky. 128, 113 S. W. 67, 22 L. R. A. (N. S.) 1165, 132 Am. St. Rep. 355; Erdman v. Erdman, 229 Ky. 162, 16 S. W. (2d) 756.

The judgment is reversed for a judgment in accordance with this opinion.