### Evans et ux. v. Caudill et al.

Jan. 28, 1944.

W. C. Hamilton and S. S. Willis for appellants.

James Clay and D. B. Caudill for appellees.

OPINION OF THE COURT BY JUDGE SIMS—Affirming.

This action was instituted by appellants, Drew Evans and wife, Lucy, against D. C. Caudill and wife, Eva, their daughter, Maxine Collins and her husband, G. S. Collins, to subject a house and lot in Morehead, Ky., to a lien of $3,500, which sum appellants had furnished toward the erection of the house Caudill built as a home for his daughter, Maxine, whose first husband was a son of appellants. The chancellor adjudged that the $3,500 was a gift from appellants to their daughter-in-law and could not be recovered, and they appealed.

Caudill was vice-president of the Peoples Bank of Morehead and his only child, Maxine, in January 1934 married Drew Evans Jr., a son of appellants. The young couple worked in the bank and lived in Caudill's home. It was the latter's intention to build a nice house for his daughter, so in May 1935 he purchased a suitable lot in Morehead and the following June started building a house thereon. The Evanses wanted to have some hand in building the house to be occupied by their son and his bride, and acting through Mrs. Evans they borrowed from Caudill's bank and deposited to the credit of Maxine $1,000 on July 24; $1,000 on Aug. 13th; and $1,500 on Sept. 3, 1935; all of which went into the house.

After the house was completed it was handsomely furnished and the record shows that the cost of the lot, house and furnishings aggregated about $20,000, all of which was paid by Caudill except the $3,500 furnished by appellants. The couple occupied their new home until young Evans was accidentally killed in November 1938. In something over a year after his death his widow remarried and the Evanses made demand upon

Caudill for the return of the $3,500 they had furnished toward building the house. His refusal to make any adjustment was followed by this suit.

The pleadings are quite voluminous, there being five amendments of the petition. Concisely stated, appellants pitched their action on an alleged parol agreement which they claim they had with Caudill whereby they were to furnish part of the money for the house and lot and for convenience the title of the property was to be held by Caudill for the benefit of the Evanses and himself, thereby a parol trust was created. The petitions were traversed followed by affirmative pleas of the statute of frauds, KS 470, KRS 371.010, and the five year statute of limitations, KS 2515, KRS 413.120. Appellees further pleaded that under KS 2353, KRS 381.170, no trust resulted in favor of appellants inasmuch as they averred in their pleadings that it was agreed for Caudill to take title to the property in his name.

Considerable proof was taken by depositions and the chancellor in a full and well-considered opinion found that the $3,500 furnished by appellants went into the house, but that there was no agreement made between them and Caudill as to how the title would be taken; nor was there any agreement between them and Maxine, or their son, concerning the repayment of this money. The chancellor held that this $3,500 was a straight-out gift to Maxine and that the property is not impressed with a trust in favor of appellants. Judgment was entered in conformity with the chancellor's written opinion which we feel is supported by the evidence.

Appellants' pleadings stated a cause of action but their proof failed to support the allegations thereof. Evans was sick when his wife obtained the loans from Caudill's bank and made the deposits to Maxine's credit, and admitted that he did not know the details of the transactions. Evans did not talk to Caudill while the house was under construction or have any agreement with him as to the property. It was testified by Evans that this $3,500 was an advancement to his son out of his estate.

Mrs. Evans testified that her son suggested that she put the money to the credit of his wife, which she did. She and her husband contributed that much to-

ward a home for their son and daughter-in-law but she never had any agreement with Caudill concerning the property, saying, "I guess I had too much confidence in him."

The only other witness testifying on behalf of appellants was their son, E. T. Evans. His testimony was to the effect that before the house was started he had a talk with Caudill and informed the latter how difficult it was for his parents to raise the $3,500 to put in this house. He further testified that all parties understood at all times that this money was a loan by the Evanses to Caudill's son-in-law. However, this last statement is a mere conclusion upon the part of the witness, is not supported by any statement of fact and is contradicted by both his father and mother.

There is no testimony in the record showing that any control or dominion was reserved over this $3,500 by the Evanses which they deposited to the credit of Maxine. It was their intention to contribute this sum toward building a house for their son and his wife. When they made the deposit, which was accepted by Maxine and who immediately started checking on it, they parted with all dominion over the fund, divesting themselves of title and it became a completed gift to Maxine. 24 Am. Jur. sec. 101, p. 782; Hart v. Hart, 272 Ky. 488, 114 S. W. (2d) 747; Collins v. Collins' Adm'r, 242 Ky. 5, 45 S. W. (2d) 811; Weisenberger v. Corcoran, 275 Ky. 322, 121 S. W. (2d) 712.

The deed Caudill obtained for this property on May 24, 1935, was not put to record by him until April 3, 1936. Both he and his daughter contradicted themselves, as well as each other, on the witness stand as to this $3,500 not having been spent on the house, but that it was used for living expenses and in the purchase of furniture. Both of them refused to file the checks showing how this money was expended and Caudill even refused to answer certain questions on the stand as to the use made of this fund. Appellants insist that such conduct on the part of Caudill and Maxine shows a purpose on their part to defraud them. We agree with the chancellor that the daughter's testimony was not frank, to say the least, and that her father's testimony and conduct on the stand was far from commendable. Yet all of this of which complaint is made becomes immaterial in view of the fact the evidence

establishes a gift to Maxine and that the money actually went into the house. Mrs. Evans was not far wrong when she testified she put too much confidence in Caudill.

Having reached the conclusion that the record shows a gift from appellants to Maxine, it becomes unnecessary to discuss the other interesting questions raised in briefs.

The judgment is affirmed.